THE MAYOR AND ALDERMEN OF JERSEY CITY

*v.*

THE JERSEY CITY WATER SUPPLY COMPANY.

[Decided November 7th, 1918.]

1. A provision in a contract for constructing water works, requiring the water to be pure and wholesome was complied with if the water was pure and wholesome at the time the water works were delivered to the city according to the tests then known.

2. Statutes of limitations do not apply to courts of equity, for the reason that the words of the statute apply only to particular remedies, but proceedings in equity to enforce a legal right are within the spirit and meaning of the statutes and have always been so considered.

3. In this case the city's cause of action on account of the impurity of the water accrued at the latest when the city took over the water works and paid for them.

4. Where the city obtained a decree directing the water works con-tractor to convey the works to the city, an application for a bill of re-view on the ground of newly-discovered evidence, where the relief sought is money decreed for breach of the contract, not covered by the prayer of the original bill, the cause of action for which accrued after the entry of the original decree, is within the statute of limitations.

5. Where the city recovered a decree directing the contractor to con-vey the water works to the city, and afterwards filed application for a bill of review on the ground of newly-discovered evidence to recover for breach of contract, an appeal will lie from the court's denial of the ap-plication, as the city is a "party aggrieved."

On bill, &c.

*Mr. Albert C. Wall,* for the applicant.

*Mr. John B. Humphreys* and *Mr. Gilbert Collins,* for the defendant.

STEVENS, V. C..

This is an application to file a bill of review.

On August 1st, 1905, Jersey City filed its bill against Patrick H. Flynn and the Jersey City Water Supply Company praying that they might be decreed to convey to it the water works conducted by them upon payment of such part of the consideration as might be ascertained to be due. A decree directing a conveyance was made in accordance with the opinion reported in *74 N. J. Eq. 104* (affirmed with a slight modification, *76 N. J. Eq. 607*). There was a reference to the late Chancellor Magie, as master, and his findings were approved in *79 N. J. Eq. 212.*

Pursuant to the decrees made, the works were transferred and delivered to Jersey City in 1911, and Jersey City paid so much of the contract price as was found to be then due. It has continued to operate and use the works ever since. It now applies for permission to file a bill of review on the ground of newly-discovered evidence. This evidence is that since the trial, bacteriologists have discovered that a bacillus known as *B. Welchii,* if present in water in considerable numbers, is productive of intestinal disorders; that this bacillus has recently been found in the Jersey City water, and that it is probable that being present now, it was present in 1911 when the works were delivered to Jersey City. The relief sought is a money decree for a sum representing the cost of intercepting sewers.

The affidavits filed show that since 1911 conditions have changed for the worse, and that there is greater pollution in the Rockaway river now than there was then. The deterioration in the quality of the water appears to have been due to the gradual increase of population on the watershed and to the fact that the gravelly soil underlying Dover, and perhaps other smaller towns, has become so permeated with polluted matter

that it is no longer capable of acting as a filter, and that, consequently, the water used by the inhabitants and the contents of cesspools find their way into the river unpurified.

The principal question is whether assuming complainant's affidavits to state the facts correctly, they show a breach of contract on the part of the contractor. His contract was "to construct a new system of water works for Jersey City and to supply said city therefrom with pure and wholesome water," \* \* \* the water to be furnished to be "pure and wholesome for drinking and domestic purposes." In the opinion filed in *Jersey City* v. *Flynn, 74 N. J. Eq. 104,* it was said: "Contracts must have a reasonable construction and must be read in the light of the surrounding circumstances. The evidence shows that before the contract in question was executed, the city authorities visited the watershed and actually saw what the conditions were. They knew that the river flowed through a thickly populated region and that some pollution at the points where the population was thickest was inevitable. I think it is quite plain that the contention of counsel for the city that because it is provided that the supply is to be free from pollution, and because the river is a part of that supply, therefore the *river* must be free from pollution from its source to the point where it flows into the Boonton reservoir is untenable. In view of the evidence the city would be demanding an impossibility. I think the contract means that the supply at the time it reaches Jersey City and is delivered into the reservoir or pipes there must be free from pollution. For example, if after the water should leave the Boonton reservoir, but partially purified, it should be subjected to the action of a filter plant, established at any point along the route, and be there freed from pollution, I have no doubt the terms of the contract would be fully complied with."

Further on I say (at *p. 138*): "There is one other remark that, in order to avoid misapprehension, I wish to make before considering the evidence. The company is not bound to provide against that which may arise in the future; in other words, against future conditions. Jersey City will have to provide against them, as occasion may require. For example, if the present population of the watershed does not create a situation

calling for the installation of a filter plant, the company is not obliged to furnish it, merely because when the population increases such a plant may be a necessity."

These quotations indicate the rule to be applied on this application.

It was strenuously contended on behalf of the contractor that the newly-discovered evidence must be evidence of fact and not of opinion; and that evidence of opinion based on discoveries made since the trial is more objectionable than ordinary opinion evidence. I should be unwilling now to hold that such opinion evidence might not, under some circumstances, be ground for a new trial. I do not think the point calls for decision. The fundamental question is whether the affidavits show that the contractor has failed to perform his contract. The tests, chemical and bacteriological, in use when the works were delivered indicated that the water was pure and wholesome, after subjection to the treatment approved by the late Chancellor Magie. But if it stood these tests then, and the test of actual user beside, it was pure and wholesome within the meaning of the contract. It is absurd to suppose that the parties contracted for such water only as would stand the tests that might be applied by future generations, in the light of future discoveries. The contract was to be completely performed at a time designated. It was the standards of the time and not the standards of the future that were to determine whether full performance had been made. The contract was not to furnish water free from every mineral and other impurity, but only from such impurities as were then regarded as detrimental to health. Water absolutely pure is to be had only in the laboratory. If the court found, as it did, that the water was pure and wholesome, according to the tests then known, and if it adjudged performance on that basis, and if the contractor delivered the works on that basis, there is no ground for asserting that he did not discharge his contract obligations.

There is nothing in the proof to indicate that the water was not pure and wholesome according to the then opinion. The case was tried by able counsel with the greatest care and elaboration. It is not pretended that any witness speaking only with

reference to the then scientific knowledge on the subject could have testified in such a way as to have changed the result. It is not impossible that bacteriologists will, in the future, as counsel suggest, discover, in addition to the *B. Welchii,* other germs or impurities that communicate disease—impurities that may have to be eliminated before, in the estimation of the scientific opinion of coming times, the water is entirely fit to drink; but is the contract to remain open until the last discovery is made?

There is another objection to the relief sought which seems to me to be fatal. It is a well-known rule that, in the language of Chief-Justice Depue, in *Colton* v. *Depew, 60 N. J. Eq. 454,* "the statutes of limitation do not apply to courts of equity, for the reason that the words of the statute apply only to particular legal remedies, but proceedings in equity to enforce a legal right are within the spirit and meaning of the statutes and have always been so considered."

Now, what is the right sought in this case. Plainly, a *legal* right. Complainant does not ask that the decree be opened, in order that it may return the plant. The right insisted on is a right to a money decree, adjudging damages for breach of contract; the measure of damages being, it is said, the cost of the intercepting sewers, which it proposes to build. This cause of action, accrued at latest in 1911, when it took the works and paid the price, for it was then, if at all, that the breach occurred. The present petition was not filed until 1918. Had it sued at law for damages it would have been barred by limitation. It is true that *in form* this is an application to file a bill of review to enable complainant to put in additional evidence, but, in substance, the evidence when put in will be used as the basis of a money decree—a decree founded on a cause of action occurring after the original decree was made. No part of the prayer of the original bill would meet the case. A new prayer would be necessary and this prayer would be grounded on a new cause of action not commenced and sued within six years next after it accrued. The case is plainly one within the spirit and meaning of the statute, if not within its letter; and none the less so because it is presented under the *form* of a bill of review. The end sought is, and is only, damages—damages that would

have been the subject of a legal action but for the presence of the decree.

There are no equities that stand in the way of applying the statute. If there be any, they are rather with the defendant who, after affirmance of the decree by the court of errors and appeals, distributed the price, or the greater part of it, among its creditors and stockholders.

The application is denied, but as the denial is, no doubt, appealable, no injustice will be done, if the views here expressed are erroneous. The test of the right to appeal is whether the party be aggrieved, and Jersey City is certainly aggrieved if it has a legal right to recover damages in this court and an opportunity to vindicate that right is denied. *Day* v. *Allaire, 31 N. J. Eq. 303; Reed* v. *Patterson, 44 N. J. Eq. 211.*