RICHARD J. MOTLEY, respondent,

*v.*

HENRY I. DARLING, appellant.

[Decided November 17th, 1919.]

1. As there is in a sale's contract, under *Comp. Stat. p. 4650*, an implied warranty of the right to sell, of quiet possession and against encumbrances, unless a contrary intention appears, a bill of sale conveying only the seller's "right, title and interest" would be cogent, or even in a proper case conclusive, evidence of such contrary intention, since ordinarily it would not be open to the buyer to contradict the written instrument.

2. The rule that such a bill of sale, conveying only the seller's "right, title and interest," is cogent or conclusive evidence of the seller's intention to exclude the implied warranties mentioned is not applicable to a suit in equity where the buyer may have the written conveyance reformed to accord with the contract which was in fact made.

3. The evidence in this case *held* to establish that it was intended to convey an absolute title, although the conveyance warranted only the seller's "right, title and interest," and therefore the intention not to warrant was not proved.

On appeal from a decree of the court of chancery advised by Vice-Chancellor Lewis, whose opinion is reported in *88 N. J. Eq. 487.*

*Mr. Joseph Anderson, Sr.,* for the complainant-appellant.

*Mr. Charles E. S. Simpson* and *Mr. George J. McEwan,* for the defendant-respondent.

SWAYZE, J.

The complainant filed his bill to establish Darling's liability on two promissory notes which plaintiff claimed had been fraudulently destroyed, notes being substituted with the defendant's name endorsed but not by him or his authority. *Motley* v. *Darling, 86 N. J. Eq. 185.* The complainant succeeded

in establishing the defendant's liability, but was required by the vice-chancellor to give a credit on the amount due. This credit the complainant disputes, and we are to decide whether it was equitable. Divested of some of the circumstances unnecessary for the decision of this question, the facts are as follows: Motley held a bill of sale of certain automobiles and an assignment of the lease of a garage. Both were absolute in form. They were in fact held by Motley as security for a debt of $900. By an arrangement, in which Darling participated, the chattels were conveyed by Motley to Flynn by bill of sale and the lease assigned for a consideration of some $1,479, of which some $279 was paid in cash, and $1,200 secured by the notes endorsed by Darling. Darling was secured by a chattel mortgage from Flynn conveying the same chattels conveyed by Motley's bill of sale. Darling seems to have relied, and might properly rely under the circumstances of the case, upon the validity of the title conveyed by Motley to Flynn. In fact there were prior liens which it was necessary to discharge, and it is the cost of discharging them which the vice-chancellor required Motley to credit on Darling's liability. Motley says that he was not liable for the goodness of the title conveyed by him to Flynn, because he only assumed to convey and agreed to warrant his "right, title and interest." He appeals to the principle of *Gould* v. *Bourgeois, 51 N. J. Law 361.* The rule in force when the present transaction took place, as stated in section 13 of the Sale of Goods act (*Comp. Stat. p. 4650*), does not differ. In a contract to sell, or a sale, there is an implied warranty of right to sell, of quiet possession, and against encumbrances, unless a contrary intention appears. We do not doubt that ordinarily a written conveyance of right, title and interest only, would be cogent, or even in a proper case conclusive, evidence of a contrary intention, since ordinarily it would not be open to the vendee to contradict the written instrument. This rule, however, is not applicable to a suit in equity, where the vendee may have the written conveyance reformed to accord with the contract that was in fact made. In the present case, the vendee, while a party to the suit, does not pray for such relief, and the question is whether one claiming under him as mortgagee may have it.

As his rights depend on the rights of the vendee, the first question is, would Flynn be entitled to relief? The answer depends upon what the contract in fact was. The only circumstance which indicates that Motley meant to convey no more than his "right, title and interest" is the interlineation of those words in the bill of sale. The bill of sale as drawn is nonsensical since by it Motley in the first person conveys to Flynn and warrants all *his* right, title and interest. Literally read, Motley conveys Flynn's interest to Flynn. The error to be sure is palpable, but it makes necessary reformation of the bill of sale. To ascertain what the contract was we must examine all the evidence. We think Motley's own testimony demonstrates that it was meant to convey an absolute title. He says he told Flynn he had absolute title; that he "gave Flynn the same title that was given to me, an absolute title;" that Flynn knew through Spraggins that he was getting an absolute title; that the bill of sale and everything else was absolute. He admitted also, and it was not questioned, that there was included in the $1,479 purchase price, $500 which Spraggins was to get from him (Motley), but said he did not know that it was paid to him for the purpose of cleaning up all other claims to the title. If the $500 was not paid for that purpose, it is difficult to explain the object of the payment. The very fact that the form of a bill of sale was adopted bears out Motley's testimony that Flynn was to have an absolute title. If the contract had been merely to assign Motley's interest as mortgagee, as security for his loan of $900, a different form would have more naturally been adopted, and the consideration would not have been made $1,479, since Motley's interest at most would have been $900 plus some interest. Motley testified in another case (and the testimony was in evidence in this case) that he went with Flynn "to put him in possession of the garage he had bought." This is not the language he would have used if in fact Flynn had bought no more than a bill of sale held as collateral security, or in other words, a mortgage on the garage. The amount of the purchase price, the form of the conveyance, the formal delivery of possession, the surrounding circumstances, convince us of the truth of Motley's testimony that Flynn was to get an absolute title. The

contrary intention of which the Sale of Goods act speaks is not proved. If Flynn were the party seeking the benefit of the statutory warranty of title, we should have no doubt that he would be entitled to a reformation of the bill of sale and to the relief that would follow. But the relief is not sought by Flynn, but by Darling, or rather is given by the decree to Darling, and to sustain the decree it must appear that Darling is entitled to that relief. As to him the situation is this: Motley appeals to a court of equity against Darling, and must do equity. He seeks to establish Darling's liability as endorser on notes that have been destroyed. The real consideration of Darling's endorsement was the transfer of the absolute title in the chattels to Flynn who immediately mortgaged them to Darling. Indeed it is probable that Darling was the principal since Flynn's name seems to have been inserted in the bill of sale by Darling's direction. Darling relied for security of his endorsements upon the existence of a good title in Flynn. Motley was to profit by Darling's endorsements, and could not have failed to know that Darling relied on Flynn's having title. The parties were all met together with their counsel and went together to the garage where Motley assumed to deliver possession to Flynn, in Darling's presence, and the notes with Darling's endorsements, were delivered to Motley, and the chattel mortgage from Flynn delivered to Darling. It is suggested that Darling knew that Motley did not own the chattels because in an agreement with third persons, executed by Darling a few days before, it was recited that Motley held the title in his name, and the third parties agreed upon the adjustment of Motley's claim to execute a chattel mortgage to Darling. The answer to this suggestion is that it may have been this very question as to the character of Motley's title that induced the warranty. In fact it was, as Motley now says, no warranty since it was only a warranty of right, title and interest. Such a warranty could hardly have been meant for any purpose except to deceive the vendee.

It would not be equitable to require Darling to pay the notes without receiving the security which it was meant he should have. We therefore agree with the learned vice-chancellor. The decree is affirmed, with costs.

*For affirmance*—THE CHIEF-JUSTICE, SWAYZE, TRENCHARD, PARKER, BERGEN, KALISCH, BLACK, WHITE, HEPPENHEIMER, WILLIAMS, GARDNER, ACKERSON—12.

*For reversal*—MINTURN—1.