JOHN J. HARRINGTON, complainant-appellee,

*v.*

CARL E. HEDER, defendant-appellant.

[Submitted October term, 1931.   Decided February 1st, 1932.]

*Messrs. Seufert & Elmore,* for the appellant.

*Messrs. Lum, Tamblyn & Colyer,* for the appellee.

The opinion of the court was delivered by

WELLS, J.

This is an appeal from a decree of the court of chancery directing the specific performance of a contract for the purchase of land on the southwest corner of Broad avenue and Cleveland Place in the borough of Palisades Park.   The contract was dated May 5th, 1928, and entered into between

the complainant, a Catholic priest, the owner of the premises in question, and the defendant, who was the mayor of the borough of Palisades Park. By the terms of the contract, the defendant·was to pay the sum of $32,000, of which $500 was to be paid down and $500 on June 1st, 1928, and $9,000 and a purchase-money mortgage for $22,000 on the delivery of the deed on June 30th, 1928.

By the terms of the contract as originally drawn, the premises were to be sold subject to four exceptions.

We are concerned with the first and fourth only, which are—

1. Restrictive covenants of record.

4. Subject to zoning ordinances and regulations of the borough of Palisades and/or the county of Bergen, or any other municipal, city or state regulations affecting said premises, if any.

On May 5th, 1928, prior to the execution of the contract, the first exception, namely, "restrictive covenants of record," was stricken out of the contract, and in the place thereof, was substituted the following restriction: "building restrictions and restrictions against noxious trades."

It is this contract, containing this exception, that the complainant seeks to have specifically enforced.

To the bill of complaint filed by the complainant, the defendant filed an answer and counter-claim. In the answer, while he apparently admits the execution of a contract between him and the complainant, he denies that the copy annexed to the bill of complaint was a true copy of the agreement executed by him, and in his counter-claim alleges, among other things, that when the agreement was presented to him by the complainant with the first restriction therein, he refused to execute it, and there was substituted the fourth restriction which pertained to zoning ordinances and municipal regulations affecting the premises, and that the agreement was then executed, but that after the execution thereof, the complainant or his agent, without the knowledge of the defendant, fraudulently inserted in hand-writing, initialed "J. F. F.," the following restrictions: "1. Building restric-

tions and restrictions against noxious trades," and that defendant without knowledge of this addition to the contract, recorded it, and did not discover until after he had made his second payment in June, 1928, that the contract contained said restriction, and that immediately thereupon he informed the complainant of his discovery, and was induced not to rescind the contract by the representation of complainant that the restriction complained about referred only to municipal regulations.

Defendant prayed in his counter-claim that the agreement might be reformed by inserting in the restriction fraudulently added, in front of the words "building" and "restrictions," the word "municipal," so that the restriction would read : *"municipal* building restrictions and *municipal* restrictions against noxious trades," or that, in the alternative, the contract be reformed by striking out in its entirety said restriction.

The position of the defendant at the hearing changed considerably from the position set up in his answer and counterclaim. He completely receded from the position that the contract annexed to the bill of complaint was not the contract entered into between the parties.

He admitted that the first exception, to wit, "restrictive covenants of record" was stricken out of the contract, and that the substituted exception for number one, to wit, "building restrictions and restrictions against noxious trades" were both in the contract when he signed it; in fact, that the contract offered in evidence was the very contract he signed. His case rested at the conclusion thereof, upon the proof which he offered to the effect that he was induced to sign this agreement by the fraudulent misrepresentation made by the complainant to him to the effect that there were no restrictions against the property in question which would prevent him from building stores or buildings for business purposes upon the entire area of the lot, and that he was led to believe by complainant's explanation, that the exception as to "building restrictions and restrictions against noxious

trades," referred only to municipal restrictions and regulations.

On this appeal defendant-appellant raises four issues.

1. There was never a meeting of the minds between the parties to the contract and, therefore, it should not be enforced.

2. The signing of the contract was the result of the fraudulent representation made by the complainant to the defendant.

3. The decree for specific performance places an inequitable burden on the defendant.

4. The contract should not be enforced because it is unconscionable, and the enforcement thereof will be attended with great hardship and manifest injuries to the defendant.

We are confronted at the outset with the extraordinary situation that the defendant has almost completely changed his defense, and in such a way that the facts as now alleged are inconsistent with the facts set up in his answer and counter-claim, and the proofs offered are in direct contradiction thereof. In spite of this, however, the learned vice-chancellor, before whom the case was tried, went into the facts as presented and determined the issues raised thereby against the defendant.

It appears from the testimony that several days before the contract was executed, there was a preliminary conference between the complainant and the defendant, at the complainant's rectory, in which the complainant said that so far as he knew, there were no restrictions against the property.

On May 5th, 1928, the parties met for the execution of the agreement which had been prepared by the complainant's attorney. When it was read to defendant, he objected to the first exception that the property was to be sold "subject to restrictive covenants of record," and the matter was fully discussed by the parties and their respective representatives, and the defendant was informed by complainant's attorney that complainant could not convey anything more than he had received, and that if agreeable to the defendant, the objectionable exception would be stricken out and a substitute inserted which would conform to the exact wording of

the complainant's title policy. This policy was then produced and shown to defendant, or his representative. The substituted restriction number one as inserted, was in the exact words of the exception in the title policy, to wit, "building restrictions and restrictions against noxious trades."

The testimony was that the real estate agent who was with the defendant at the time of the signing of the contract and who represented him in the transaction, after reading or hearing this exception read, said: "That doesn't mean anything because all along Broad avenue it is a parcel of the same tract which we are buying to-day. There are a number of buildings on this street there and they are all built up and those restrictions don't amount to anything anyway." So, by common consent, the new words were inserted in lieu of the stricken exception and the paper was then executed.

We fail to understand how it can be satisfactorily contended that there was not a meeting of the minds. There was apparently a complete understanding as to the wording of the contract. That the complainant was not aware of just what those restrictions were and that the defendant himself did not comprehend their full meaning, does not indicate that there was not a meeting of the minds as we understand that phrase. It was not necessary in order to have a meeting of the minds that precisely what the "building restrictions and restrictions against noxious trades" were, should be known to both the complainant and the defendant and thoroughly understood by them in the same manner and to the same extent. The record was open to the defendant and legal advice available on the subject.

We are in accord with the cases cited by the appellant to the effect that "a contract to purchase land induced by material misrepresentation as to the restrictions to which the land is subject will not be enforced in equity." *Muller* v. *Weiss, 91 N. J. Eq. 321.*

We also approve the citation that "on a bill for specific performance the court will grant or refuse its aid according to the justice of the case; and will never extend its aid to a suitor who has practiced a fraud, or procured the contract

by misrepresentation of a material fact, and that the remedy by specific performance is discretionary; that the question is not, what must the court do, but what, in view of all the circumstances of the case in judgment, should it do to further justice." *Plummer* v. *Keppler, 26 N. J. Eq. 481.*

The same case also holds, however, that when the contract has been fairly procured and its enforcement will work no injustice or hardship, it is enforced almost as a matter of course. It is in those cases where the contract has been procured by any sort of fraud or falsehood, or its enforcement will be attended with great hardship or manifest injustice, that the court will refuse its aid.

There was no suggestion of fraud in the testimony submitted, and we think that the proof clearly indicates that there was no such representation on the part of the complainant operating as an inducing cause to the signing of the contract by the defendant.

The lot in question is a large one and evidently well located, and it seems more than likely that the defendant, who was mayor of the town, was acquainted with the restrictions as to the lots in this locality, which was a prominent one, and that he regarded his purchase as a good bargain until he found himself in difficulties in his effort to secure a mortgage loan on the property in question.

Defendant claims that it was not until about June 5th, 1928, that he was informed by his attorney what the actual restrictions were, which proved *inter alia,* to be: "No stores shall be erected and no manufactories carried on between Grand avenue and Broad avenue as shown on said map. No dwelling shall be erected nearer than twenty-five feet to the front line of the lot upon which it is built," and he claims that he immediately thereupon notified the complainant that he could not take the title with these restrictions. The defendant claims that he had informed the complainant that he wanted this lot for the purpose of erecting thereon a bowling alley and restaurant which would cover practically all of the lot in question, and that he asked the complainant whether or not there were any restrictions on the property and was told that it was free and clear of restrictions.

It is to be remembered, however, that this conversation (which is denied in its material part by complainant) was superseded by a conference had at the time of the execution of the contract more than a week later, at which the complainant exhibited his title policy to the defendant, and at which time it was agreed that the property was to be sold subject to "building restrictions and restrictions against noxious trades."

Furthermore, it does not appear anywhere in the evidence that the defendant is barred from erecting stores or buildings for business purposes upon the entire tract.

The restrictions contained in other deeds for contracts of lands which are parts and parcels of the same tract as the one in dispute, are not enforced, as is shown by the fact that stores have been built theron and that they extend to the very edge of the property line.

The defendant, knowing that he was buying the premises with "building restrictions and restrictions against noxious trades," could, with ordinary care, have readily discovered what these restrictions were, and he cannot expect equity to relieve him when thus put upon inquiry. Equity does not aid one whose indifference contributes materially to the injury he complains of.

The next contention is, that a decree for specific performance places an inequitable burden on the defendant. Just why a decree which compels a party to a contract to perform it places an inequitable burden upon him, we are unable to see, and we are of the opinion that there is no merit in this contention any more than there is in the last point raised by the defendant that the contract is unconscionable, and the enforcement of it will be attended with great hardship and manifest injury to the defendant.

The mere fact that the property was worth less than the defendant thought it was worth when he purchased it, is not a good defense.

We conclude, therefore, that the decree of the court of chancery directing the specific performance of the contract in this case should be affirmed.

*For reversal*—None.