This cause is another in the procession of specific performance suits that have multiplied in number since the invigoration of the real estate market.
By virtue of an agreement in writing bearing date April 30th, 1943, the defendants contracted to convey to the complainants a tract of real estate situate in Hamilton Township, Mercer County, New Jersey. The quotation of paragraphs *Page 26 
2, 3, 4 and 5 of the written agreement will exhibit literatim
the stated terms of the bargain:
"2. On the execution of this agreement by the parties hereto, the Buyers will pay to the Seller the sum of $600 on account of the aforesaid purchase price of $5,450 and on the first day April, 1943, and on the first day of each and every month thereafter, the Buyers will pay to the Seller the sum of $35 on or before January 1, 1944, and the first of each and every year thereafter the Buyers will pay to the Seller the sum of $400 or any larger amount which the said buyer desires to pay. The said Buyer shall have the option of paying and satisfying the unpaid balance at any time.
"Subject to the terms and conditions hereinafter set forth, the difference between the aforesaid payments and the total amount of the aforesaid deductions to be made by the Seller, shall be entered on the books of the Seller and regarded as a credit in favor of the Buyers on account of the principal sum due to the Seller from the Buyers.
"3. The Buyers will pay all other charges against the said lands and premises during the lifetime of this agreement, in addition to the aforesaid monthly payments.
"4. All payments to be made by the Buyers to the Sellers hereunder shall be made, until further notice from the Seller to the Buyers, at the office of the Seller, 249 Hamilton Avenue, in the aforesaid City of Trenton.
"5. When the total amount of the aforesaid monthly credits or payments on account of the aforesaid principal sum of $5,450 to be calculated and entered in favor of the Buyers in the manner aforesaid, shall have reached the sum of $2700 the Seller will convey to the Buyers, their heirs and assigns, by a good and sufficient deed, in proper statutory form for recording the lands and premises aforesaid, and the said buyers will execute a Bond 
Mortgage for the unpaid balance to the said Seller, containing the same provisions as set forth for payment in this contract."
The defendants acknowledge that the complainants made the down payment and have regularly made the accruing monthly and anniversary payments and that on October 29th, 1945, the complainants communicated to them their desire and ability to reduce the purchase price to $2,700 and to execute the purchase-money bond and mortgage to secure the payment of the balance in pursuance of the terms of the agreement. In fact, on January 30th, 1946, the complainants informed the defendants of their election to pay in cash the entire balance of the purchase price.
The defendants rejected the tenders of the complainants for the sole and pivotal reason that the amount offered did *Page 27 
not include any interest on the unpaid portion of the purchase price during the period of its suspension of payment. It is said that it was in that exigency that the defendants discovered that the written agreement did not embrace any covenant obliging the complainants to pay interest, currently or otherwise, on the balance of the total purchase price remaining periodically unpaid.
The complainants instituted the present suit to compel the defendants to perform the agreement of sale in conformity with its expressed terms. The defendants assert that the agreement does not truly evidence the common intention of the parties, and by their counter-claim the defendants request a reformation of the contract to incorporate in paragraph 2 of that instrument the following covenant which they allege was by mistake and inadvertence omitted in the draft of the compact. Motley v.Darling, 91 N.J. Eq. 76; 108 Atl. Rep. 430; Union Fur Shop,Inc., v. Max Melzer, Inc., 133 N.J. Eq. 416; 29 Atl. Rep.
2d 873; 3 Pom. Eq. Jur. (5th ed.) § 860. The missing stipulation is said to be to this effect:
"From the monthly sum to be paid by the buyers as aforesaid, the seller will first deduct the taxes levied against the premises agreed to be sold, pro-rated monthly, beginning April 1st, 1943, and interest on the balance of the principal due, at the rate of 5% per annum each month."
The evidence must first be examined retrospectively to determine the facts. The factual conclusions will point the way to an equitable decision.
The defendant Daniel A. Pulone, who participated in the negotiations of the sale of the property to the defendants, is apparently a man of education and of business experience. He possessed knowledge of conveyancing. As an active officer of a building and loan association, he had in the passing years acquired an enlightened perception of contracts for the sale of real estate on installment payment terms. He explains that he handed to the stenographer of the building and loan association a form of the contract conventionally utilized by the association in such sales and instructed her to prepare a conformable contract for the sale of his own tract of land to the complainants on similar terms. He acknowledges that *Page 28 
principally she heeded his directions, but re infecta she neglected to simulate and reproduce in her copy the stipulation that from the monthly and annual payments made by the buyers, the seller should first deduct not only taxes and insurance, but also interest on the balance of the principal remaining unpaid.
Perhaps such was the modus operandi which Mr. Pulone employed in the composition of the agreement. In reading paragraph 2 of the agreement I notice the provision: "subject to the terms and conditions hereinafter set forth, the difference between the aforesaid payments and the total amount of the aforesaid deductions * * *." A perusal of the agreement up to that point fails to mention any deductions "aforesaid." Moreover I discover in paragraph 6 the words: "and not upon or account of any statements * * * made or held out to the Buyers by the Seller or by its officers, agents or representatives in regard thereto * * *." Those observations tend to support the inference that a form appropriate to a contract by a corporate vendor was copied. However, the defendants failed to produce a copy of the standard form of the building and loan association agreement which is said to have been imitated, and the stenographer who made the alleged transcription was not invited to testify.
Antithetically, however, it may be said that the complainants are unschooled and particularly ignorant of the customary conditions and stipulations of contracts for the sale of real estate. They were conscious of their ignorance and inexperience, and they prudently caused the proposed agreement to be examined by a capable attorney. Indeed it was at the request of the attorney that Mr. Pulone redrafted one of the pages of the agreement. The complainants reposed reliance upon their attorney and acted upon the information he imparted to them in the presence of the defendants.
The complainants were supremely interested to understand the objects, periods, and amounts of the payments to be made by them. The attorney saw nothing whatever in the agreement concerning an obligation of his clients to pay interest on the unpaid balances of the purchase price, and consequently *Page 29 
he said nothing to them about it, nor was the subject mentioned by the defendants.
The paragraph of the agreement requiring the "buyers" to "pay all other charges against the said lands and premises during the lifetime of this agreement, in addition to the monthly payments" (emphasis mine) was interpreted, and I think with reason, to mean tax assessments, insurance, and such like, and that those charges were the only ones to be defrayed "in addition to" the installment payments in reduction of the purchase price. Parenthetically let me add that the wives evidently perceived little and cared less about the refinements of the transaction.
I am persuaded that the complainants did not assent to any undertaking to pay interest or intend to do so. The omission of such a covenant in the contract was not in its relation to their comprehensions a matter of laxity, error, or mistake.
There is a significant distinction between the rescission and the reformation of a written instrument. A court of equity may rescind a contract for a mistake which is unilateral. To warrant reformation, the mistake must be mutual. Green v. Stone,54 N.J. Eq. 387; 34 Atl. Rep. 1099. To alter and enlarge a contract which is completely and accurately expressive of the intention and understanding of the one party to accommodate its terms to the mistaken understanding of the other party would be doing right to the latter by committing a precisely equivalent wrong to the former. In the absence of fraud or imposition, the mistake must be one that is mutual, material, and not one that has been solely caused by inexcusable negligence. Santamaria v. ShellEastern Petroleum Products, Inc., 116 N.J. Eq. 26, 29;172 Atl. Rep. 339; By-Fi Building and Loan Association v. New YorkCasualty Co., 116 N.J. Eq. 265; 173 Atl. Rep. 90.
The failure of the defendants affirmatively and adequately to convince me that the mistake was in reality mutual deprives them of their desired reformation and rectification of the contract. But was the omission of a covenant concerning the payment of interest even a unilateral mistake in its substantive *Page 30 
legal quality and significance, or was it a feature of the transaction concerning which the defendants were inadvertent and heedless not only in the preparation but as well at the execution of the contract? Equity does not ordinarily aid one whose indifference was the sole cause of the injury of which he now complains. Harrington v. Heder, 109 N.J. Eq. 528, 534;158 Atl. Rep. 496.
Here the contract was composed and prepared in its entirety by the defendants. It constituted their representation of their offer to convey which the complainants accepted. The contract as drawn was elaborately discussed at the office of the attorney. It was solemnly executed by the parties under their seals. The complainants have faithfully complied with its terms continuously since 1943. In such circumstances I am unable to ignore the established rule that all omissions should be resolved against the defendants and equally so to vanquish the sturdy presumption that the defendants were in fact cognizant of the contents and scope of the agreement as edited.
Assuredly, the cause of action of the complainants for specific performance of the contract as written must rest upon the existence of a valid and enforceable contract. There must have been a consensus of minds between the parties. The requisiteaggregatio mentium is not confuted merely because one party subsequently discovers something that he should have contemplated in the preparation and execution of the contract which he incogitantly executed. At the moment of the consummation of this agreement I believe the minds of these parties harmonized and concurred. At best, the defendants were guilty of positive neglect. They cannot with good grace now repudiate their own agreement, much less can a court of equity renovate it to relieve them of the consequences of their own heedlessness and inattention.
I shall advise a decree dismissing the counter-claim of the defendants and awarding to the complainants the relief they seek. *Page 31