190 N.J. Super. 424 (1983)
463 A.2d 986
FRANK T. DESIDERIO, PLAINTIFF,
v.
MARIE D'AMBROSIO AND SANFORD I. FELD, DEFENDANTS.
Superior Court of New Jersey, Chancery Division Somerset County.
Decided June 8, 1983.
*425 Charles K. Kurebanas, appeared on motion for Frank T. Desiderio, plaintiff.
Richard J. Palazzo, appeared on motion for Marie D'Ambrosio, defendant (W. Stephen Leary, attorney).
Christine D. Petruzzell, appeared on motion for Sanford I. Feld, defendant (Wilentz, Goldman & Spitzer, attorneys).
DREIER, J.S.C.
In December 1973 plaintiff, Frank Desiderio, sold his home and a portion of its grounds to defendant Marie D'Ambrosio and her husband, and moved to Cape Coral, Florida. On the remaining portion of the Desiderio property were the objects of this *426 replevin action, three life-size cast-iron statues: a wolf, an elk and a hunter with two retrievers. Before closing on the sale of the house, the parties agreed that the D'Ambrosios would take the statues onto their property at such time as the adjoining plot was sold. In August 1974 plaintiff wrote the D'Ambrosios:
* * * * * * * *
When we sold you our home, you agreed to allow us to leave the 3 cast iron statues ... on your property. We anticipate moving the statues to North Carolina in the future, at which time you will allow us to enter your property to remove them.
In late 1974 Desiderio sold the adjoining portion of his property to a couple named O'Brien. In late 1974 or early 1975, pursuant to their agreement, Mrs. D'Ambrosio moved the statues onto her land at a cost to her of approximately $300. In June 1976 Desiderio spoke with Mrs. D'Ambrosio to tell her he was having difficulties in constructing his home in Hilton Head. He noted that if the statues were any problem, they could be moved to his sister's or his attorney's property. (They both lived nearby.) Thereafter there was no further contact between the parties. In 1977 Desiderio built a house on Cape Cod, intending to move the statues there.
In May 1981, five years after her last contact with plaintiff, (and over 6 1/2 years after the statues had been moved to her property), Mrs. D'Ambrosio sold the statues to defendant Sanford Feld for $3,000, paying a broker a $500 commission for the sale, and Feld removed the statues from her lawn. Delighted with his new acquisition, Feld telephoned plaintiff, whose name and address had been furnished by Mrs. D'Ambrosio, to ask him about the provenance of the statues. As the conversation advanced, Desiderio gave Feld some of the information he had called for, but towards the end of the conversation, he asserted title to the statues and challenged D'Ambrosio's authority to sell them. (He wrote to his own attorney to that effect on May 8, 1981.) Plaintiff demanded, through his attorney, that Feld return the statues, and in August 1982 Desiderio brought this *427 action for replevin, naming as defendants, Marie D'Ambrosio and Sanford Feld.[1]
Both the facts of this case and the question presented are distinct from any raised in the Redmond v. New Jersey Historical Society, 132 N.J. Eq. 464 (E. & A. 1942). There, the bailee knew when it took possession of a portrait that it could acquire title upon fulfillment of a certain contingency expected to be far in the future  the death without issue of the testatrix's then fifteen-year-old son. The parties understood, therefore, that the bailment would endure for many years, and that a definite event  the death of the testatrix's son, with or without issue  would eventually determine the question of title. Furthermore, defendant had a contingent interest in the portrait. One question before that court was whether the plaintiffs had slept on their rights once they knew that the defendant asserted title to the portrait in breach of the terms of the bailment.
In the present case, Mrs. D'Ambrosio was to keep the statues until plaintiff called for them and he was expected to call for them when he relocated permanently, an event which neither party expected to be long in coming.[2] Thus the bailment here was not limited by an event certain to occur, and neither party *428 intended that it endure long. The question before this court is not one of the time within which an action must be brought after breach of a subsisting bailment. Rather the court is called upon to decide two novel questions: First, how long does a gratuitous bailment of indefinite term survive in the absence of any demand by the bailor and of any act by the bailee inconsistent with the bailor's title? Second, if no replevin is to be granted in a case of a late demand, should other relief be available to a bailor?

I
The first issue is neither governed by any statute nor has it been the subject of any reported decision in this State. There is, however, case law in other jurisdictions which can guide the court. Phrasing the question as one of the time within which demand must be made, the court in Campbell v. Whoriskey, 170 Mass. 63, 48 N.E. 1070 (1898), observed that the time "depends upon the construction to be put upon the contract in each case." If the contract provides no specific time within which demand must be made, the limitation "within a reasonable time" will be implied. A "reasonable time" is a question of law to be determined in the light of each contract and the probable intention of the parties to it, and in the absence of any indication to the contrary, a reasonable time within which demand must be made is the same as the time within which an action on the contract must be brought. Id. 48 N.E. at 1072. This rule is noted in Annotation, "When statute of limitations starts to run against bailor's action for recovery," 57 A.L.R.2d 1044, 1054-1055 (1958), and cases cited therein; 18 Williston on Contracts (Jaeger 3d Ed. 1978) § 2041, at 86, and cases there cited; and 8 Am.Jur.2d, Bailments (1980) § 308, at 1044. This court deems such rule to be preferable to the pure "reasonable time" rule  applied without reference to any objective standard  also discussed both in Campbell and in Williston.
*429 Under the standard of O'Keeffe v. Snyder, 83 N.J. 478 (1980), inquiry in this claim for equitable replevin[3] might focus upon the conduct of the one asserting title  whether he has acted with "due diligence" to preserve his rights  and not upon the conduct of the one in possession. In O'Keeffe the court held:
The focus of the inquiry will no longer be whether the possessor has met the tests of adverse possession, but whether the owner has acted with due diligence in pursuing his or her personal property. Id. at 497.
As in O'Keeffe, and in all problems of bars to equitable claims, the issue is approached as a matter of laches against the one asserting title or even of the more general doctrine of equitable estoppel. Atlantic City v. Civil Serv. Comm., 3 N.J. Super. 57, 60 (App.Div. 1949); Carlsen v. Masters, Mates & Pilots Pension Plan Trust, 80 N.J. 334, 339 (1979); Clark v. Judge, 84 N.J. Super. 35, 54 (Ch.Div. 1964), aff'd o.b. 44 N.J. 550 (1965). The statute of limitation, which governs a legal replevin action, N.J.S.A. 2A:14-1, is by its terms applicable only to an "action at law"; chancery applies the doctrine of laches in its stead, Jersey City v. Jersey City Water Supply Co., 90 N.J. Eq. 14, 18 (Chan. 1918), aff'd o.b. 90 N.J. Eq. 603 (E. & A. 1919), although a court of equity will not ignore the spirit and policy of the statute. But, in any event, the question here is whether the demand was timely, not whether a suit for breach of the bailment agreement is barred.
This court prefers to assess "due diligence" in terms of a reasonable period within which a demand must be made, rather than purely in terms of an evaluation of conduct, as suggested by O'Keeffe. "Reasonable period", presumptively governed by *430 the statutory period of limitations, is an easily ascertainable and lucid standard; indeed, the Supreme Court has noted that the passage of time alone may constitute laches, under the facts of a particular case, Lavin v. Hackensack Bd. of Ed., 90 N.J. 145, 152-153 (1982). This analysis also furthers the goals of the law of limitations  reducing judicial inquiry, enhancing predictability, precluding stale claims and promoting stability of title. The equitable maxim, "Equity aids the vigilant, not those who sleep on their rights," further supports the conclusions reached here. Thompson v. Monteiro, 58 N.J. Super. 302, 305 (Ch.Div. 1959); Harrington v. Heder, 109 N.J. Eq. 528, 534 (E. & A. 1931); Moro v. Pulone, 140 N.J. Eq. 25, 30 (Chan. 1947).
The case may also be approached in terms of analogous case law. The limitation on the period within which a demand must be made on an unbreached bailment of indefinite term, absent special circumstances or a manifest contrary intention of the parties, can be likened to the period of limitation on a demand note. It runs from the inception of the underlying contract. Ligran, Inc. v. Medlawtel, Inc., 86 N.J. 583 (1981). This analogy is also noted in Williston, supra, § 2041 at 859 and in Annotation, supra, 57 A.L.R.2d, § 6 at 1055.
This court determines that plaintiff failed to make a demand for the property within a reasonable time of the bailment.[4] Under the rationale of Campbell, supra, such a bailment survived for a reasonable period, during which the bailor must have made a demand. In the absence of special circumstances or a manifest contrary intention of the parties, the reasonable period was coterminous with the period within which an action for breach of the agreement might have been brought, here six *431 years.[5] The court finds no such special circumstances or intention of the parties. Plaintiff's right of action for return of the property thus lapsed in 1980.

II
Mrs. D'Ambrosio has successfully raised laches as a bar to plaintiff's claim, but there may be a further equitable consideration. The imposition of the bar of laches, as with most equitable remedies or defenses, is discretionary with a court, based upon the circumstances of the case. See Donnelly v. Ritzendollar, 14 N.J. 96, 107 (1953), and cases cited therein. The bar of laches will be applied here, but first this court must determine whether the equitable maxim "He who seeks equity must do equity" requires Mrs. D'Ambrosio to pay over any portion of what she received to plaintiff. As noted in 2 Pomeroy, Equity Jurisprudence (5th ed. 1941) § 385 p. 52:
... The meaning [of this maxim] is, that whatever be the nature of the controversy between two definite parties, and whatever be the nature of the remedy demanded, the court will not confer its equitable relief upon the party seeking its interposition and aid, unless he has acknowledged and conceded, or will admit and provide for, all the equitable rights, claims, and demands justly belonging to the adversary party, and growing out of or necessarily involved in the subject-matter of the controversy. It says, in effect, that the court will give the plaintiff the relief to which he is entitled, only upon condition that he has given, or consents to give, the defendant such corresponding rights as he also may be entitled to in respect of the subject-matter of the suit.
Mrs. D'Ambrosio obtained $3,000 for property that was not hers, except by default. She also paid a $500 sales commission and expended some $300 for moving the statues to her property. Thus she received a net $2,200. As noted above, there need be no return of the items nor any accounting for the current fair market value of the property; but equity could require that the $2,200 be paid over to plaintiff. As noted in Restatement of the Law, Second, Restitution, (Tentative Draft No. 1, April 1983) § 1:

*432 A person who received a benefit by reason of an infringement of another person's interest, or of loss suffered by the other, owes restitution to him in the manner and amount to prevent unjust enrichment. [Emphasis added].
Or, as stated in the original Restatement, § 1:
A person who has been unjustly enriched at the expense of another is required to make restitution to the other. [Emphasis added].
There would have been an "infringement" or "loss" of plaintiff's interest here, had the assertion of such interest not been barred by laches. But since the plaintiff's action was so barred, there was no property right of another to be infringed or lost at the time of sale. If the period of a bailment is exceeded, the property is deeded abandoned to the bailee, since a bar to the original owner's action for possession vests title in the possessor. O'Keeffe v. Snyder, supra, 83 N.J. at 500. Thus the "unjust" element is missing.[6]
Summary judgment will therefore be granted to defendants Feld and D'Ambrosio. Counsel shall submit the appropriate orders pursuant to R. 4:42-1.
NOTES
[1] On this motion by defendants for summary judgment, this court must accept plaintiff's version of the facts. R. 4:46-2; Judson v. Peoples Bank & Trust Co., 17 N.J. 67 (1954). The court cannot consider defendant D'Ambrosio's contention that the statues were left with her on the express understanding that the bailment would run for one year. If the statues were not reclaimed within that period, Mrs. D'Ambrosio contends, they were to become the D'Ambrosios' property. On this understanding the D'Ambrosios bore the cost of moving the statues onto their land, paid a sales commission, and felt no hesitancy about telling Feld how they had come into possession of the statues.
[2] Indeed the event was not long in coming. Desiderio moved to Florida immediately, but no party claims that this was the relocation intended in his agreement with Mrs. D'Ambrosio. Four years later (and three years after Mrs. D'Ambrosio moved the statues onto her property), Desiderio relocated to Cape Cod.
[3] An equitable replevin, as distinct from a legal replevin, is an action for return of an item which has a special value apart from its intrinsic value and for which, therefore, there can be no measure of money damages. An example would be an heirloom diamond ring, valuable not for what it would bring at sale but rather for its descent within the family. Such an item is irreplaceable at any price. See Burr v. Bloomsburg, 101 N.J. Eq. 615 (Chan. 1927).
[4] Plaintiff made no demand of Mrs. D'Ambrosio when he spoke to her in 1976. Rather, he told her he was having difficulty relocating. The occasion for that conversation is consistent with an expectation of the parties that the bailment would be brief.
[5] Had plaintiff made a demand within that period and been refused, he would have had six years from the time of demand within which to bring an action for breach of the bailment agreement. N.J.S.A. 2A:14-1.
[6] Unjust enrichment is not defined in the Restatement (See Comment C, to Restatement § 1, and Comment H to T.D. # 1 of Restatement 2d § 1, supra) but is generally understood as not being limited to cases fault, mistake or voluntary activity. However, as is noted in the Restatement of Restitution § 179, and Comment A thereto, the right to restitution may be terminated, as here, by the plaintiff's laches.