218 N.J. Super. 101 (1987)
526 A.2d 1139
BRICK PLAZA, INC., A NEW JERSEY CORPORATION, PLAINTIFF-APPELLANT,
v.
HUMBLE OIL & REFINING COMPANY, A DELAWARE CORPORATION; EXXON COMPANY, U.S.A., A DELAWARE CORPORATION; MARGARET A. LANDOLFO AND ANGELA M. LANDOLFO, INDIVIDUALLY AND AS TRUSTEE, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued May 12, 1987.
Decided June 10, 1987.
*102 Before Judges ANTELL, BRODY and D'ANNUNZIO.
Christine D. Petruzzell argued the cause for appellant (Wilentz, Goldman & Spitzer, attorneys; Christine D. Petruzzell of counsel and on the brief).
James D. Carton, III argued the cause for respondent (Carton, Nary, Witt & Arvanitis, attorneys; James D. Carton, III on the brief).
The opinion of the court was delivered by, ANTELL, P.J.A.D.
On July 24, 1967 plaintiff agreed to lease from defendant Humble Oil & Refining Company (hereinafter referred to as *103 Exxon) two parcels of vacant land in Brick Township. The lease was to run from September 1, 1967 to September 30, 1986. It also granted plaintiff an option to purchase the premises for $80,000. Plaintiff's right to purchase was expressly conditioned upon its exercise of the option "at any time during the period from October 1, 1985 through January 1, 1986, by the Tenant giving to the Landlord written notice at any time during said period of its intention to exercise such purchase option...."
This action for declaratory judgment and injunctive relief arises from plaintiff's failure to notify Exxon of its intention to exercise the purchase option until June 10, 1986 and Exxon's refusal to recognize the late notice as a valid exercise of the option. Plaintiff explains that its late notice was an "honest mistake" resulting from its president's reliance upon an unexecuted preliminary draft of the lease agreement. Although that document provides for the purchase option in question it does not call for the giving of notice by plaintiff as a prerequisite to the valid exercise thereof. In granting summary judgment in favor of Exxon the Chancery Division judge, noting that forgetfulness was not a basis for equitable relief, concluded that although plaintiff's mistake may have been an honest one, it was not a reasonable explanation by an experienced real estate developer for its failure to meet the clearly expressed conditions of the agreement. Plaintiff appeals.
During the term of the lease plaintiff constructed two buildings on the land and spent approximately $70,000 to reconstruct one of the buildings after a fire in April 1985. It argues that to deny it now the benefit of the purchase option would work a hardship amounting to a forfeiture which the equitable powers of the court should be exercised to prevent.
An option to purchase realty is a "binding unilateral contract whereby the owner offers to convey to the optionee at the price specified in the event the latter accepts the offer by exercising the option in strict accordance with its terms and *104 within the time designated." State v. New Jersey Zinc Co., 40 N.J. 560, 576 (1963). The general rules is that in an option contract, time is of the essence. Socony-Vacuum Oil Co. v. Pabian, 32 N.J. Super. 390, 394 (Ch.Div. 1954); 1A Corbin, Contracts, § 273 at 593 (1963).
Cases in which equity has intervened to mitigate the hardship resulting from a tenant's failure to give timely notice occur where it is found that the tenant's delay was "slight," where it did not prejudice the landlord and where failure to grant relief would cause the tenant unconscionable hardship. Sosanie v. Pernetti Holding Corp., 115 N.J. Super. 409, 416 (Ch.Div. 1971); F.B. Fountain Co. v. Stein, 97 Conn. 619, 118 A. 47 (Sup.Ct.Err. 1922); Annotation, "Circumstances excusing lessee's failure to give timely notice of exercise of option to renew or extend the lease," 27 A.L.R. 4th 266 (1984). Although these principles have for the most part been applied where the option involved a lease renewal, we deem them equally pertinent to the late exercise of a purchase option. See Blumenthal v. 162 East 80th Tenants, Inc., 88 A.D.2d 871, 451 N.Y.S.2d 771, 772-773 (App.Div. 1982).
The following statement of the Supreme Court in Dunkin' Donuts of America v. Middletown Donut Corp., 100 N.J. 166, 182 (1985) is germane:
We focus first on the contention that strict adherence to contractual remedies in the circumstances before us will impose a forfeiture on the franchisee. Although it is true that equity abhors a forfeiture, equity's jurisdiction in relieving against a forfeiture is to be exercised with caution lest it be extended to the point of ignoring legal rights. [Citations omitted]. Thus if parties choose to contract for a forfeiture, a court of equity will not interfere with that contract term in the absence of fraud, accident, surprise, or improper practice. [Citations omitted].
We are presented here not with a "slight" delay, but one which extended almost five and a half months beyond the expiration of the three month period limited for the giving of notice. The maxim has long been recognized that equity aids the vigilant, not those who sleep on their rights. Stout v. *105 Seabrook's Executors, 30 N.J. Eq. 187, 190-191 (Ch. 1878), aff'd o.b. 32 N.J. Eq. 826 (E. & A. 1880). Plaintiff's reliance upon an unsigned preliminary draft of the lease agreement when the original of the executed agreement was in the possession of its own attorney amounts, in our view, to a course of "positive neglect." Moro v. Pulone, 140 N.J. Eq. 25, 30 (Ch. 1947). "Equity does not ordinarily aid one whose indifference was the sole cause of the injury of which he now complains." Ibid.
It is notable that the final executed agreement specifically provides for the giving of notice within a prescribed period, whereas the preliminary draft says nothing as to how and when the option may be exercised. It is clear from this that the provision for notice was the subject of specific negotiation.
It may be that a court of equity could provide a wiser and more beneficent result than that dictated by the agreement before us. But this is not what the parties bargained for. Business people do not enter into agreements to provide grist for the work of the courts. They do so to bring order and predictability to their affairs. Giving full credit to plaintiff's claim of mistaken honest belief that the option clause made no provision for notice, and taking into account its consequent hardship, to recognize such neglect as excusable and now order the Chancery Division to balance the equities would introduce intolerable uncertainty into a carefully structured contractual relationship. Parties should not be obliged to speculate about how the conscience of a court may define their rights and obligations when an option has been exercised long after the expiration of a specified time. Where the clearly fixed obligations of an optionee have been so grossly breached our interest in preserving the stability of business arrangements outweighs whatever equitable purpose may be served by relieving plaintiff from the consequences of its own neglect. See Gorrie v. Winters, 214 N.J. Super. 103, 107 (App.Div. 1986).
Affirmed.