276 N.J. Super. 96 (1994)
647 A.2d 478
THE GOODYEAR TIRE AND RUBBER COMPANY, AN OHIO CORPORATION, PLAINTIFF/RESPONDENT,
v.
KIN PROPERTIES, INC., A CORPORATION; MERCANTILE BANK, N.A., SUCCESSOR TO MERCANTILE TRUST COMPANY, A MISSOURI CORPORATION, INDIVIDUALLY AND AS TRUSTEE; AND CARL P. SCHULZE, SUCCESSOR INDIVIDUAL TRUSTEE, DEFENDANTS/APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued September 12, 1994.
Decided September 27, 1994.
*97 Before Judges DREIER, VILLANUEVA and WEFING.
Peter R. Bray argued the cause for appellants (Bray, Chiocca, Rappaport & Rothstadt, attorneys; Mr. Bray and Garry S. Rothstadt, on the brief).
Pamela Lee Matarrese argued the cause for respondent (Vaida & Manfreda, attorneys; M. Anthony Vaida, Ms. Matarrese and Paul E. Pisano, on the brief).
The opinion of the court was delivered by VILLANUEVA, J.A.D.
Defendants appeal from a declaratory judgment holding that plaintiff's notice of intent to renew a lease sent prematurely was effective to extend the subject lease. We reject defendants' contention that the notice was ineffective because it was sent prior *98 to the window time period specified in the lease and we therefore affirm.
Plaintiff, The Goodyear Tire and Rubber Company, is a manufacturer and marketer of automobile and truck tires. In 1961, plaintiff leased from Berkshire Properties, Inc. a thirty-acre tract of land[1]. A warehouse and office building were constructed on these premises, known as 1665 Jersey Avenue, North Brunswick, New Jersey, to serve as a distribution center for the Mid-Atlantic and Northeast region.
The lease was for a twenty-five year term and provided for ten five-year renewal options for a total of seventy-five years. The lease required that plaintiff
exercise its option to extend the Basic Term by giving written notice of such exercise to Lessor not less than 6 months nor more than 9 months prior to the expiration of the Basic Term or the extended term, as the case may be, then in effect. Should Lessee fail to exercise any option to extend the term hereof, Lessee shall have no right thereafter to exercise any succeeding option to extend the term hereof.
All notices required by the lease to be given to either party were required to be in writing sent "registered mail, postage prepaid."
The twenty-five year term expired on October 31, 1986. On February 5, 1986, plaintiff by registered mail, provided defendants with notice of its intent to exercise the first renewal option for a five-year extension of the lease.
On May 16, 1990, plaintiff exercised its second option to renew for another five-year period beginning on November 1, 1991. Wanda Hicks, an employee of plaintiff, indicated that the failure to send a renewal letter within the prescribed window time period was due to her being overworked. She testified that she knew she should have consulted the actual lease before mailing the renewal *99 letter but instead relied on a lease digest in her file (which did not include the window provision for renewal notices). Defendants do not deny receipt of the May 16, 1990 renewal notice nor that the plaintiff intended to renew the lease. Plaintiff did not send a new notice within the three-month period specified in the lease.
Plaintiff received no response to the renewal letter as had occurred when the first renewal option was exercised in 1986. However, Katherine Cokic, a Trust Officer at Mercantile Bank, testified at depositions that on or about May 25, 1990, she sent a letter by regular mail, addressed to "P. Smith, Goodyear, Akron, Ohio" suggesting that the renewal letter may have been ineffective and advising that a letter be filed in the appropriate period indicated in the lease. Plaintiff denied receiving the letter, and the court held as a fact that the letter had not been received.
After the time period for renewal passed, a representative of defendant Kin Properties, Inc. (Kin) contacted Goodyear to discuss Goodyear's vacating the premises. Goodyear responded that its letter of May 16, 1990 was effective to renew. Nonetheless, Kin began to investigate the possibility of marketing the property. Upon learning of these attempts, plaintiff filed a complaint seeking a declaratory judgment that plaintiff complied with the lease and the renewal option and was therefore entitled to remain in possession of the premises. Plaintiff claimed that the lease is worth millions of dollars to plaintiff particularly because the rent specified in the lease is now below the market rate. Additionally, plaintiff cited its continual adherence to the lease aside from this "inadvertent mistake" in prematurely requesting renewal as a reason for mandating a renewal of the lease. Defendants answered and filed a counterclaim for possession and damages.
On October 8, 1993, after a four-day trial, the trial judge, Judge Bachman, rendered an oral decision granting judgment in favor of plaintiff and dismissing the counterclaim. On October 28, 1993, the judge entered a written order declaring plaintiff's renewal of the lease effective and that the extension would expire October 31, 1996.
*100 The trial court found that the renewal letter sent on May 16, 1990, was not in compliance with the lease terms but that plaintiff at all times intended to renew the lease. In his oral decision, the judge referenced "Brick Plaza, Incorporated v. Humble Oil," 218 N.J. Super. 101, 526 A.2d 1139 (App.Div. 1987), and relied on that case for situations "in which equity has intervened to mitigate the hardship resulting from the tenant's failure to give timely notice ... where it is found that the tenant's delay was slight, where it did not prejudice the landlord, and where failure to grant relief would cause the tenant unconscionable hardship." The judge noted that the "bulk of authority deals with late, rather than early notice." Distinguishing late notice from early notice cases, the court stated that
[t]hose cases which rule for the landlord in late notice cases do so upon the principle that relieving tenants in the late notice situation would introduce intolerable uncertainty into a carefully structured contractual relationship. It is certainly understandable that late notice, except where the time period is slight, could create such uncertainty. However, it is difficult for this court to understand how early notice would create the same problem.
The judge found that although the notice was given early, "the defendants at all times knew that the plaintiff wished to renew this matter," and defense counsel conceded that fact in closing arguments.
Judge Bachman determined that, while the plaintiff will suffer a loss in terms of millions of dollars if the lease is not renewed,
The defendants will be in no better or worse position than they would have been if the lease is renewed, or they would have been if the notice was given in the proper window time. The defendants will, of course, if the court rules in his favor, benefit from an unanticipated windfall profit resulting from [a] mistake made by a single employee of Goodyear.
As to Mercantile's alleged May 25, 1990 letter, the judge stated that he could not "question that the letter was sent" but he also believed plaintiff's assertion that the letter was never received, noting that it was not sent certified or registered mail as required by the lease. The court explained that
[a]ny presumption attendant, and the court is familiar with the cases cited by the plaintiff, to sending mail through the regular U.S. mail is offset by certain facts and circumstances of this case. It is inconceivable to this court that had they received *101 it they would not have reacted immediately. They were faced with a tremendous economic impact.
The judge further declared that plaintiff's "whole course of conduct is such that they at all times intended to renew, thought that they had renewed, and acted accordingly."
The court therefore summarized its findings that "a notice of renewal was in fact sent. That the defendant[s] in fact received it. That no harm resulted to the defendant[s] nor has there been one scintilla of evidence introduced before this court that any harm resulted to the defendant[s] as a result of that early renewal notice." Finally, Judge Bachman declared that the mistake of one employee of plaintiff should not result in termination of the lease because that would cause a "completely inequitable result of great economic harm to the plaintiff, and also result in an unearned windfall to the defendants."

I.
On November 22, 1993, defendants filed a notice of appeal. On January 4, 1994, defendants filed an amended notice of appeal. Defendants argue that (1) a party to a contract, who breaches its obligations as a result of positive neglect, is not entitled to be relieved from the consequences of its mistake; (2) when it is established that a letter is mailed, it is error to conclude the letter was not received absent affirmative proof of that fact; (3) it was improper for the court to reject the submission of proofs concerning, and to summarily deny, defendants' application intended to establish that the complaint should have been dismissed based upon the misrepresentations submitted to the court in obtaining an injunction; and (4) the decision of the trial court should be reversed, since its pre-trial determination concerning waiver of the attorney client privilege, was improper and wrongfully limits the scope of the evidence.
There is a vast difference between a substantially late exercise of an option to renew a lease, in which case the option expires and is lost, and the early exercise of an option which merely permits *102 the parties to solidify the terms of the extension period at an earlier time. There is a purpose to the cutoff date for the exercise of the option. A tenant is generally required to give ample notice of the exercise of an option to renew a lease so that the landlord is not forced to wait until the last day of the lease term before he is informed whether the tenant wishes to remain on the premises. This requirement substantially reduces the risk that the premises will remain unoccupied for an indefinite period in the event that the renewal option is not exercised. The plaintiff herein satisfied that purpose. There appears to be no discernable purpose to the earlier date of a window time period, such as the one herein, other than to provide a trap for the unwary.
Defendants' reliance upon Brick Plaza, Inc. v. Humble Oil, 218 N.J. Super. 101, 103, 526 A.2d 1139 (App.Div. 1987), is misplaced. There the plaintiff had the option to purchase the property which was the subject of a lease between plaintiff and an oil company. The option had to be exercised within a three month window which was about nine months before the lease was due to expire. Ibid. The plaintiff sent notice of its intent to purchase over five months late and the oil company refused to recognize the late notice. Ibid. The plaintiff claimed that the late notice was the result of an honest mistake caused by the "president's [of plaintiff] reliance upon an unexecuted preliminary draft of the lease agreement." Ibid.
The Brick Plaza court articulated that an option to purchase "is a binding unilateral contract" and that "[t]he general rules [sic] is that in an option contract, time is of the essence." Id. at 103-04, 526 A.2d 1139. As to delayed exercise of an option, the court declared
Cases in which equity has intervened to mitigate the hardship resulting from a tenant's failure to give timely notice occur where it is found that the tenant's delay was "slight," where it did not prejudice the landlord and where failure to grant relief would cause the tenant unconscionable hardship.
[Id. at 104, 526 A.2d 1139 (citing Sosanie v. Pernetti Holding Corp., 115 N.J. Super. 409, 416, 279 A.2d 904 (Ch.Div. 1971) and other cases.]
*103 The court also quoted the language of the Supreme Court in Dunkin' Donuts of America v. Middletown Donut Corp., 100 N.J. 166, 182, 495 A.2d 66 (1985), which stated that equitable relief should be granted cautiously "lest it be extended to the point of ignoring legal rights." Ibid. The court noted that the delay was not "slight" but rather in excess of five months and that "equity aids the vigilant, not those who sleep on their rights." Ibid. (citing Stout v. Seabrook's Executors, 30 N.J. Eq. 187, 190-91 (Ch. 1878), aff'd o.b., 32 N.J. Eq. 826 (E. & A. 1880)). The court determined that "[p]laintiff's reliance upon an unsigned preliminary draft of the lease agreement when the original of the executed agreement was in the possession of its own attorney amounts, in our view, to a course of `positive neglect.'" Id., 218 N.J. Super. at 105, 526 A.2d 1139 (quoting Moro v. Pulone, 140 N.J. Eq. 25, 30, 52 A.2d 818 (Ch. 1947)). Thus, the court indicated that "`[e]quity does not ordinarily aid one whose indifference was the sole cause of the injury of which he now complains.'" Ibid. (quoting Moro, supra, 140 N.J. Eq. at 30, 52 A.2d 818).
As with the lease digest in this case, the unsigned preliminary lease agreement in Brick Plaza "says nothing as to how and when the option may be exercised" while the actual executed leases in both this case and Brick Plaza "specifically provide[] for the giving of notice within a prescribed period." Ibid. However, there are two important differences between this case and that of Brick Plaza: first, the notice herein was early not late, and, second, plaintiff herein suffers substantially more loss than the defendants herein if the notice is deemed ineffective as opposed to the rather equal loss by both parties in Brick Plaza.
We have found only one case in the United States involving a premature notice to exercise an option to renew a lease. In Cutshaw v. Campbell, 3 Tenn. App. 666 (Tenn. Ct. App. 1925), the court stated that it did not matter that a notice was sent sixty days prior to the termination date of a lease of real property which stated that plaintiff/tenant "had a right to renew... the lease ... by giving thirty days notice of their intention to do *104 so...." The landlord contended that the notice had been given too early. However, even though the notice was deemed timely, the court concluded that it was insufficient for other reasons, and affirmed a judgment holding that the landlord was entitled to possession of the leased premises. See also William B. Johnson, Annotation, What Constitutes Timely Notice of Exercise of Option To Renew or Extend Lease, 29 A.L.R.4th 956, 966 (1984) (summarizing Cutshaw).
In Sosanie v. Pernetti Holding Corp., 115 N.J. Super. 409, 412, 279 A.2d 904 (Ch.Div. 1971), a lease renewal option was required to be exercised no later than six months prior to the expiration of the lease. After the renewal period expired, the landlord informed the tenants that they must vacate. One or two days later, the tenants sent a letter of renewal. The tenants contended that if they were forced to vacate the premises an "unjust and inequitable forfeiture" would result. They also contended that the landlord "sat back and surreptitiously waited until the notice deadline had passed, whereupon he pounced upon the unsuspecting ... [tenants] and administered the coup de grace with a notice to vacate." Id. at 412-13, 279 A.2d 904.
The Sosanie court rejected the tenants' assertion that the landlord had a duty to remind a lessee of the option to renew before the renewal period expired. As the court did in Brick Plaza, the Sosanie court noted that with regard to option contracts, "time is of the essence." Ibid. The court tempered that rule however by noting that
in regard to renewal options, at least as they apply to a landlord-tenant relationship, the general rule in New Jersey is modified so that failure to give timely notice may be relieved against if fraud, accident, surprise or mistake are shown, or where there are other special circumstances which warrant a court of equity to grant relief against the consequences of the lessee's failure to notify the lessor within the stipulated time or in the specific form or manner prescribed.
[Id. at 414, 279 A.2d 904 (citing Marjer v. Layfmen, 140 N.J. Eq. 68, 53 A.2d 187 (Ch. 1947); Koch v. H. & S. Development Co., 249 Miss. 590, 163 So.2d 710 (Miss. 1964)).]
Further, the Sosanie court stated that "[i]t is also the general rule that equity will not relieve against mere forgetfulness." Ibid. *105 The court also noted that "[t]here is ample and well-reasoned authority for demanding exact compliance with the terms of the option" because "the optionor is bound while the optionee is free to accept or reject; thus, courts will not hold the optionor any longer than he has agreed to be held." Id., 115 N.J. Super. at 415, 279 A.2d 904. Again, these principles apply to the prevention of late exercise of renewal options while this case involves early renewal notice.
The Sosanie court found that substantial harm would result to the tenants if forced to relocate and that the landlord did not change position in reliance on the tenants' delay. Id. at 416, 279 A.2d 904. The court determined that "[i]t can hardly be disputed that their failure to give timely notice was based upon an honest mistake of fact in that they had forgotten the date of the deadline. In any event, the delay was slight and the loss to defendant insignificant." Ibid. Therefore the court determined that the enforced forfeiture of the lease would be "inequitable and unconscionable" and that "special circumstances" justified enforcement of the renewal option "even though said option was not exercised precisely according to governing terms." Ibid. Similarly, plaintiff herein would suffer substantial hardship if the lease were not renewed and defendants have not changed their position in reliance on the premature notice and, in fact, concede they had notice of plaintiff's intent to renew. The principle of special circumstances warranting equitable relief has been recognized by other courts. 51C C.J.S. Landlord & Tenant § 59 (1968).
It is true that "[e]quity does not ordinarily aid one whose indifference was the sole cause of the injury of which he now complains." Muro v. Pulone, 140 N.J. Eq. 25, 30, 52 A.2d 818 (Ch. 1947); see also Marjer v. Layfmen, 140 N.J. Eq. 68, 72, 53 A.2d 187 (Ch. 1947). However, to impose a hardship on plaintiff for the mistake of one employee which caused no disadvantage to the defendants would be inequitable. Id. at 74, 53 A.2d 187 (ruling that a renewal was effective despite the lack of a signature because the lessor could not have misunderstood whom the notice *106 was from and the lessor was not disadvantaged); Xanthakey v. Hayes, 107 Conn. 459, 140 A. 808, 811 (1928) (granting relief to lessee who forgot to give timely notice when notice was only three days late and one of those days was a holiday and another a Sunday, lessee made improvements and lessee's family depended on the use of the leased property for their livelihood); F.B. Fountain Co. v. Stein, 97 Conn. 619, 118 A. 47, 50 (1922) (inadvertence is excusable and justifies relief because delay was slight and the loss to the lessor was small while hardship to the lessee was great due to improvements made); Simons v. Young, 93 Cal. App.3d 170, 155 Cal. Rptr. 460, 467 (1979) (equitable relief is not available where failure to timely renew is due entirely to forgetfulness or neglect of lessees); Reynolds-Penland Co. v. Hexter & Lobello, 567 S.W.2d 237, 239 (Tex.Civ.App. 1978) (failure to read a lease was not an honest and justifiable mistake); McClellan v. Ashley, 200 Va. 38, 104 S.E.2d 55, 58 (1958) (equitable relief not justified where only excuse for failing to give timely notice was neglect).
Whether to enforce an option to renew is a question within the court's discretion. Marjer, supra, 140 N.J. Eq. at 72, 53 A.2d 187 (citing 32 Am.Jur., Landlord and Tenant § 981). A trial court's findings should not be disturbed on appeal unless they are "`so wholly insupportable as to result in a denial of justice.'" Rova Farms Resort v. Investors Ins. Co., 65 N.J. 474, 484, 323 A.2d 495 (1974) (quoting Greenfield v. Dusseault, 60 N.J. Super. 436, 444, 159 A.2d 433 (App.Div.), aff'd o.b., 33 N.J. 78, 161 A.2d 475 (1960). The trial judge's findings that the premature renewal was the result of the mistake of one employee and defendants were aware that plaintiff intended to renew the lease and were not disadvantaged by the premature renewal are supported by adequate and credible evidence in the record.

II.
Defendants also contend that the trial court erred when it concluded that the May 25, 1990 letter sent by Mercantile to *107 plaintiff by regular mail was never received by plaintiff. Defendants argue that mail correctly addressed and mailed should be presumed received by the party to whom it was sent and therefore because the court found that the letter was sent, then it necessarily had to find that the letter was received by plaintiff.
"[T]he general rule is that there is a presumption that mail correctly addressed, stamped and mailed, was received by the party to whom it was addressed." Johnson & Dealaman, Inc. v. Wm. F. Hegarty, Inc., 93 N.J. Super. 14, 20, 224 A.2d 510 (App. Div. 1966); accord Amodio v. Civil Service Comm'n, 81 N.J. Super. 22, 27, 194 A.2d 512 (App.Div. 1963); Szczesny v. Vasquez, 71 N.J. Super. 347, 354, 177 A.2d 47 (App.Div. 1962). The presumption is rebuttable however and "may be overcome by evidence that the notice was never in fact received." Johnson, supra, 93 N.J. Super. at 20, 224 A.2d 510 (citing Szczesny, supra, 71 N.J. Super. at 354, 177 A.2d 47).
Judge Bachman concluded that he could not "question that the letter was sent" because he had "no reason to doubt Miss Cokic's [sic] testimony." Noting plaintiff's denial that the letter was ever received and that the letter was sent by regular mail rather than certified or registered mail, the judge stated that he also believed plaintiff's testimony. The judge indicated that in this case the presumption of receipt was offset by "certain facts and circumstances" present and that "[i]t is inconceivable to this court that had they [plaintiff] received it they would not have reacted immediately. They were faced with a tremendous economic impact." The judge's finding is therefore adequately supported by the record. Rova Farms, supra, 65 N.J. at 484, 323 A.2d 495.

III.
Because we have found that the early notice to renew was effective, we do not reach defendants' other arguments.
Affirmed.
NOTES
[1] Apparently, Berkshire financed the leasehold by having mortgage notes issued and purchased by Mercantile Trust Company, whose successor is Mercantile Bank, N.A. The property was deeded to several entities until Kinpark Associates and High Point Associates obtained title. Now title is held by Mercantile Bank, N.A. as trustee for various parties.