NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R.1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-5465-14T3

PILGRIM PLAZA, LLC,

 Plaintiff-Respondent/
 Cross-Appellant,

v.

XIU FANG LIU,

 Defendant-Appellant/
 Cross-Respondent.
______________________________

 Argued November 30, 2016 – Decided April 11, 2017

 Before Judges Alvarez and Accurso.1

 On appeal from Superior Court of New Jersey,
 Chancery Division, Essex County, Docket No.
 C-293-12.

 Benjamin B. Xue argued the cause for
 appellant/cross-respondent (Xue &
 Associates, P.C., attorneys; Mr. Xue, on the
 brief).

1 Hon. Carol E. Higbee participated in the panel before whom this
case was argued. The opinion was not approved for filing prior
to Judge Higbee's death on January 3, 2017. Pursuant to
R. 2:12-2(b), "Appeals shall be decided by panels of 2 judges
designated by the presiding judge of the part except when the
presiding judge determines that an appeal should be determined
by a panel of 3 judges." The presiding judge has determined
that this appeal shall be decided by two judges.
 Richard L. Zucker argued the cause for
 respondent/cross-appellant (Lasser Hochman,
 LLC, attorneys; Mr. Zucker, of counsel and
 on the brief).

PER CURIAM

 In this shopping center tenancy dispute tried in the

Chancery Division, defendant tenant, Xiu Fang Liu, appeals from

an amended final judgment reforming the parties' lease,

declaring her in default of the lease as reformed and as failing

to have exercised an option to renew and awarding the landlord

damages, including attorneys' fees. The landlord, plaintiff

Pilgrim Plaza, LLC, cross-appeals claiming the Chancery judge

erred in denying its demand for holdover rent, late charges and

interest in accordance with the reformed lease and in

determining its fee award. Because there is substantial,

credible evidence in the record to support Judge Moore's

findings and fee award, we affirm, substantially for the reasons

expressed in his comprehensive and cogent opinions delivered

from the bench on May 19 and June 26, 2015.

 The Pilgrim Plaza Shopping Center straddles the line

between Cedar Grove and Verona. In 2007, defendant took an

assignment of a triple net lease from the owner of a Chinese

restaurant on the Cedar Grove side. In the lease plaintiff

inherited, the tenant's proportional share of real estate taxes

 2 A-5465-14T3
was 5.18 percent, which defendant began paying when she assumed

the lease. In 2008, defendant negotiated a new lease with the

landlord, plaintiff's predecessor and the entity which filed the

original complaint in the case.2

 The landlord was at that time using a new form lease for

the shopping center. The negotiations were conducted through

counsel, as defendant averred she spoke "very limited English

and can read even less." Although there were discussions over

the amount of the base rent for the space, the parties were in

agreement that the triple net arrangement for defendant's pro

rata share of real estate taxes and common area maintenance

(CAM) charges would remain. The new lease called for defendant

2 In her post-trial submissions, defendant argued for the first
time that Pilgrim Plaza, substituted in as plaintiff in a
"supplemental" complaint filed in 2013, lacked standing because
it acquired its title from an entity different from her prior
landlord. Although this issue was not included in the pre-trial
order, see R. 4:25(b)(7), and was not raised at trial, Judge
Moore addressed it for sake of completeness. Relying on
plaintiff's deed in evidence and accepting plaintiff's
explanation of the obvious connection between the related
entities of defendant's former landlord and plaintiff's
predecessor in title, the judge dismissed defendant's belated
standing challenge as without merit. See R. 4:26-1; Crescent
Park Tenants Ass'n v. Realty Equities Corp. of N.Y., 58 N.J. 98,
101 (1971). As plaintiff, the owner of the shopping center,
would appear an obvious proper party to prosecute this tenancy
action, see Port Liberte II Condo. Ass'n, Inc. v. New Liberty
Residential Urban Renewal Co., LLC, 435 N.J. Super. 51, 64 (App.
Div. 2014), we consider the issue without sufficient merit to
warrant discussion in this opinion. R. 2:11-3(e)(1)(E).

 3 A-5465-14T3
to pay as "additional rent" her proportionate share of the real

estate taxes and CAM charges, calculated "by dividing the total

ground floor demised area of the Premises by the total leasable

ground floor area of all buildings in the Shopping Center[,]

which percentage is currently 1.58%." The lease provided that

"[n]otwithstanding the foregoing," defendant's share of the real

property taxes "which relate solely to the portion of the

Shopping Center located in Cedar Grove . . . shall be equal to

2.23%." The lease further provided defendant's share "shall be

modified from time to time in the event of a change in the

ground floor area of the Premises or the total leasable ground

floor area of all buildings in the Shopping Center."

 Apparently unnoticed by either party was that defendant's

pro rata share of the real estate taxes as calculated by the

method set out in the lease was then 5.18 percent, not 2.23

percent. At trial, the landlord's attorney surmised she

miscalculated the percentage by relying on the ratios for space

on the Verona side of the shopping center. She, however, sent

an email to the landlord's representative confirming the

correctness of the 2.23 percent figure before providing

defendant the new lease for execution. The landlord's

representative acknowledged his receipt of the email, but

testified he had not focused on the error, being more interested

 4 A-5465-14T3
in the part of the email advising that defendant was bringing

her rent arrears current.

 After the lease was executed but before the start of the

new term in August 2009, the landlord advised defendant, along

with all the other tenants of the shopping center, that it had

hired an architect to re-measure the entire shopping center. As

a result, defendant's pro rata share of the shopping center's

real estate taxes to Cedar Grove rose from 5.18 to 5.3 percent.

The landlord billed defendant for her 5.3 percent share, and

defendant paid the increased rate, although the tax

reconciliation statement explaining the change was sent in

February 2010 to defendant's old address in Jackson Heights, New

York.3

 In May 2010, nearly ten months into the new lease term,

defendant asked the landlord for a thirty percent reduction in

her base rent because the movie theatre in the shopping center

had closed, and the effect that and the economic downturn were

having on her business. The landlord agreed to a one-year, ten

3 Defendant's counsel had advised the landlord's counsel in May
2008, before execution of the lease, to change defendant's
address from Jackson Heights to the restaurant in the shopping
center. This was apparently not done and the landlord continued
to send tax reconciliation statements to defendant at her
Jackson Heights address until January 2013, when it sent the
2012 reconciliation to her at the restaurant.

 5 A-5465-14T3
percent reduction. At the end of that period, defendant asked

the landlord to allow her to continue paying the same reduced

base rent through the end of the lease term in 2014. The

landlord refused.

 In February 2012, the landlord's attorney wrote to

defendant's counsel enclosing the most recent tax reconciliation

statement for the Cedar Grove portion of the shopping center

and advised that defendant owed $2778.93 in unpaid real estate

taxes and CAM charges. Counsel for defendant responded that his

client would immediately pay any arrears, but expressed

confusion over defendant's pro rata share of 5.3 percent of real

estate taxes as the executed lease listed the percentage as 2.23

percent. He also claimed he could not tell whether the CAM

charge was calculated in accordance with the 1.58 percent rate

included in the lease.

 In response, the landlord's counsel attached the CAM

reconciliation demonstrating that defendant was charged a 1.52

percent pro rata CAM charge, slightly less than the 1.58 pro

rata charge included in the lease. As to the real estate tax

charge, the landlord's counsel did not address the discrepancy

in the lease but instead attached the results of the 2009

remeasurement of the shopping center, quoting the provision of

the lease permitting the modification of the tenant's share of

 6 A-5465-14T3
the taxes. Based on the architect's conclusion that defendant

occupied 5.3 percent "of the ground floor area of the Cedar

Grove portion of the Shopping Center," counsel asserted

defendant's "[pro rata] share of the Cedar Grove taxes is 5.3%."

Following that exchange and in accordance with defendant's

counsel's representation, defendant brought her rent current,

including the outstanding CAM charges and her share of the Cedar

Grove real estate taxes.

 In December 2012, defendant owed the landlord slightly over

$6500, less than one month's rent. The landlord filed a

complaint seeking reformation of the lease to correct its

"scrivener's error" regarding defendant's pro rata share of the

Cedar Grove taxes, possession and damages, including a service

fee of eight percent and default interest of eighteen percent.

 The case was very aggressively litigated and closely

overseen, first by Judge Klein and then, following her

retirement, by Judge Moore. Judge Moore noted seventy-two

separate filings in the matter over the case's two-and-a-half-

year existence. Plaintiff filed four motions within the first

three-and-a-half months of the case.

 In the middle of this hotly contested matter, the tenant

faced the deadline to exercise her option to extend the lease

for another five-year term. The landlord's representative wrote

 7 A-5465-14T3
directly to defendant on July 18, 2013, advising her that

"should [she] wish to exercise [her] option which shall become

effective on August 1, 2014[,] [she] must so notify the landlord

in writing no later than July 31, 2013." He wrote defendant

another letter the very next day, stating that, notwithstanding

his earlier letter, plaintiff could not exercise her option

because she was in default of her lease obligations.

 Defendant claimed she wrote back on July 24, 2013,

exercising her option. When she did not receive any response

from the landlord, she made inquiry with her counsel. He wrote

to the landlord's counsel on September 20, 2013, approximately

seven weeks after the option deadline, requesting the letter be

considered "another confirmation/notice to the Landlord" that

defendant was exercising her option to renew the lease.

 Plaintiff's counsel emailed his response the following day,

noting the landlord had no record of any renewal notice.

Plaintiff's counsel asserted not only was the option not

exercised timely, but because defendant was in default of her

lease obligations, she had no right to "extend the term of the

tenancy beyond July 31, 2014."

 Plaintiff filed a second "supplemental" complaint in

November 2013 seeking a declaratory judgment that defendant

 8 A-5465-14T3
failed to timely exercise her option to renew.4 In April 2014,

plaintiff made its second motion for partial summary judgment,

including on the count asserting defendant's failure to timely

renew the lease. Although denying plaintiff relief on the other

counts, Judge Moore granted plaintiff summary judgment on

defendant's failure to timely exercise the option. The judge

subsequently denied defendant's request for reconsideration.

 Without advising the court, plaintiff instituted a summary

dispossess action in landlord/tenant court against defendant.

Judge Moore subsequently advised the parties of his intention to

sua sponte reconsider the partial summary judgment on the

option. Following argument, Judge Moore vacated his prior

orders, ordered the dismissal of the summary dispossess action

and required defendant to pay plaintiff the base rent called for

under the lease's extension option rider and real estate taxes

and CAM charges without prejudice to plaintiff's application for

holdover rent.

 The case was tried over six non-consecutive days from

December 2014 to February 2015. As Judge Moore noted,

notwithstanding the intensity with which the case was litigated,

4 Plaintiff's first "supplemental" complaint asserted additional
grounds for defendant's default relating to her failure to
perform certain non-monetary obligations required by the lease,
which the landlord had not previously asserted.

 9 A-5465-14T3
the trial mainly concerned just two issues, whether plaintiff

was entitled to reformation of the lease and whether defendant

had timely exercised her option to renew. In the event the

court decided the second issue against defendant, it also had to

resolve whether equity should relieve the forfeiture.

 Plaintiff argued the parties were in agreement the triple

net feature of the old lease would remain unchanged, and the

words of the lease accurately reflected their agreement. It

contended the inaccurate percentages inserted into the lease was

simply a "scrivener's error" entitling it to reformation.

Plaintiff maintained defendant was always well aware of the

actual percentages and simply latched onto the error in bad

faith when it refused to reduce defendant's base rent in 2012.

As to exercise of the option, plaintiff argued time was of the

essence and defendant never sent the landlord's representative

any letter exercising the option. Plaintiff asserted

defendant's testimony to the contrary was a lie and she

manufactured her letter of July 24, 2013 after the fact.

 Defendant maintained calculating her pro rata share of the

Cedar Grove real estate taxes was the exclusive responsibility

of the landlord, who negligently discharged that duty. Relying

on the landlord's counsel's testimony that she did not simply

fail to copy the percentages correctly but miscalculated them by

 10 A-5465-14T3
relying on the ratios for the Verona side of the shopping

center, defendant contended the mistake could not fairly be

characterized as a scrivener's error. Defendant also noted the

lawyer testified she sent her calculations to the landlord's

representative for review before finalizing the lease and

sending it to defendant for execution. Defendant asserted those

facts made clear that the error was simply a negligent,

unilateral mistake by the landlord precluding reformation of the

lease.

 As for her exercise of the option, defendant maintained her

son typed the one-sentence letter to the landlord, and her

husband addressed the envelope and sent it to the landlord's

representative by regular mail, just as he had sent his two

letters to her. She also contended that even if the landlord

never received her letter, her counsel made clear she was

exercising her option only a few weeks after the deadline. As

the option deadline was a full year before expiration of the

lease, and the landlord had not taken any steps to advertise or

re-let the space in the interim, defendant argued forfeiture was

too harsh a penalty. Defendant testified she had invested

nearly $100,000 in the restaurant, in which her entire family

worked. She emphasized the inequity of allowing the landlord,

with its superior resources, relief from its unilateral mistake

 11 A-5465-14T3
while holding her to the letter of the lease, resulting in the

complete loss of the business she had worked hard to build.

 After hearing the testimony of the witnesses and reviewing

the parties' extensive post-trial proposed findings of fact and

conclusions of law, Judge Moore entered judgment for plaintiff

reforming the lease and granting it possession and damages. The

judge found the percentages in the lease for defendant's pro

rata share of the Cedar Grove real estate taxes did not

accurately reflect the parties' actual agreement to continue the

triple net arrangement under the prior lease. Although

rejecting plaintiff's theory that defendant raised the issue in

bad faith, the judge did not find any evidence defendant had

relied on the erroneous percentage, so as to preclude relief to

plaintiff. Concluding that reformation was appropriate to cure

what the judge agreed was a scrivener's error, he granted

judgment to plaintiff reforming the lease.

 Determining whether defendant had timely exercised her

option to renew was clearly a closer question. After hearing

the parties testify, Judge Moore concluded defendant did not

properly exercise the option. The judge found the landlord's

representative "more credible" than defendant on the issue. In

making that finding, the judge found "the one fact that

 12 A-5465-14T3
shift[ed] the weight" to the landlord's representative was the

posture of the litigation.

 The landlord's representative copied his lawyer on his

first letter to defendant about the deadline for exercising the

option. The following day, he wrote another letter, again

copying his counsel, basically retracting the first, telling

defendant she cannot exercise the option because she was in

default, referencing the ongoing litigation. Judge Moore

concluded in the context of "a very lawyered case with extensive

motion practice," he was "certain, based upon all the facts"

that the landlord's representative would have shared any letter

he received from defendant with his counsel. The judge further

found "the credible evidence is that [defendant] was in default

both on the rent issue and on the maintenance issue at the end

of July under that paragraph of the extension option rider

making the tenant unable to exercise the option."

 Having concluded the option was not timely exercised, the

judge considered whether equity should relieve the forfeiture.

Relying on Dunkin' Donuts of America, Inc. v. Middletown Donut

Corporation, 100 N.J. 166, 183-84 (1985) and Brick Plaza, Inc.

v. Humble Oil & Refining Company, 218 N.J. Super. 101, 104 (App.

Div. 1987), the judge found no "fraud, accident, surprise or

 13 A-5465-14T3
improper practice" that would justify "alter[ing] the very clear

language of the lease agreement."

 Turning to damages, the judge calculated rent due in

accordance with the lease as reformed, but denied plaintiff's

request for interest, late fees and holdover rent, finding those

charges improper under the circumstances. The judge noted it

was plaintiff's lease error that led the parties into

litigation. Further, he found defendant was in good faith

paying rent during the pendency of the matter and should not be

penalized by the imposition of interest, late fees and holdover

rent in order to fairly litigate legitimate issues.

Accordingly, relying on plaintiff's tenant ledger, the judge

awarded plaintiff damages of $23,633.66 along with $7533.95 in

rent coming due after the court's decision and a $602.72 late

fee for failure to pay that sum when due.

 After considering plaintiff's request for attorneys' fees

of $240,710.53 and expenses of $2760, he judge awarded $35,000

in fees and $1461 in expenses. The judge acknowledged both

parties' arguments as to an appropriate fee award and reviewed

the request in light of the eight factors of RPC 1.5(a).

Scrutinizing the certification in support of the application,

the judge's central finding was the case was litigated in a

manner all out of proportion with the amount of money at issue.

 14 A-5465-14T3
See Litton Indus., Inc. v. IMO Indus., Inc., 200 N.J. 372, 387

(2009).

 Specifically, the judge found the hours grossly excessive,

noting plaintiff sought over $100,000 for basic litigation

services including preparation for trial, trial exhibits,

document reviews and preparing and responding to proposed

findings of fact and conclusions of law. The judge acknowledged

plaintiff's counsel's experience and reputation but concluded a

great many tasks could have been performed competently by a

lawyer with less experience and a much reduced billing rate.

 Final determinations made by the trial court sitting in a

non-jury case are subject to a limited and well-established

scope of review: "'we do not disturb the factual findings and

legal conclusions of the trial judge unless we are convinced

that they are so manifestly unsupported by or inconsistent with

the competent, relevant and reasonably credible evidence as to

offend the interests of justice[.]'" In re Trust Created By

Agreement Dated Dec. 20, 1961, ex rel. Johnson, 194 N.J. 276,

284 (2008) (quoting Rova Farms Resort, Inc. v. Investors Ins.

Co. of Am., 65 N.J. 474, 484 (1974)).

 Having reviewed the record as well as the parties'

extensive briefing of the issues, and applying that standard

here, we have no reason to quarrel with any of Judge Moore's

 15 A-5465-14T3
findings or conclusions. The issues in this case were limited

and uncomplicated. The law is well-settled and the outcome

turned largely on the judge's assessment of the credibility of

the witnesses, which we are in no position to second-guess. The

judge considered whether equitable relief should be afforded

defendant and determined it was not warranted, notwithstanding

that enforcement of the contract would undoubtedly cause

hardship to her. See Brunswick Hills Racquet Club, Inc. v.

Route 18 Shopping Ctr. Assocs., 182 N.J. 210, 223 (2005).

 Judge Moore made detailed factual findings and explained

the reasons for his conclusions. We are satisfied that his

legal conclusions were sound and his damage award reasonable

based on the facts in evidence. Plaintiff applied to a court of

equity for relief in the form of reformation of a contract made

necessary by its own error. The litigation was prolonged by its

own litigation strategy and the inability of the court to

provide the parties consecutive trial days. We find nothing

unremarkable or inequitable in limiting the landlord under such

circumstances to the rent owed without late fees and interest of

eighteen percent. See Graziano v. Grant, 326 N.J. Super. 328,

342 (App. Div. 1999) (noting "a court of equity should not

permit a rigid principle of law to smother the factual realities

to which it is sought to be applied"). To do otherwise would

 16 A-5465-14T3
unfairly penalize the tenant for litigating what the court found

were legitimate issues pursued in good faith. See Rehberger v.

Rosenfeld, 100 N.J. Eq. 18, 23 (Ch. 1926) ("Cases could be

multiplied to show that one party to a suit cannot correct his

own mistake with costs as against those in nowise responsible

for the errors complained of.").

 Our standard of review of a fee award is even more

restrictive. "[A] reviewing court will disturb a trial court's

award of counsel fees 'only on the rarest of occasions, and then

only because of a clear abuse of discretion.'" Litton Indus.,

Inc., supra, 200 N.J. at 386 (quoting Packard-Bamberger & Co.,

Inc. v. Collier, 167 N.J. 427, 444 (2001)). We find no such

abuse of discretion here.

 Plaintiff sought fees of over $240,000 in a landlord/tenant

matter begun when the tenant owed the landlord only slightly

over $6500, less than one month's rent. Over $147,000 of what

plaintiff's counsel sought from defendant it had not even billed

its own client. Judge Moore's careful findings about the amount

of time spent on specific tasks make clear he scrutinized the

billings. We agree that charging defendant over $240,000 in

attorney's fees in a landlord/tenant dispute in which plaintiff

recovered less than $24,000 could not be justified under

applicable law. See id. at 389 ("[T]he relationship between the

 17 A-5465-14T3
fee requested and the damages recovered is a factor to be

considered by the trial court because the notion of

proportionality is integral to contract fee-shifting in order to

meet the reasonable expectations of the parties.").

 Judge Moore clearly identified the time and fees he found

excessive for the tasks performed. He likewise clearly

explained the expenses he found unjustified. Having reviewed

the billings and counsel's arguments, we cannot find the judge

abused his considerable discretion in this matter,

notwithstanding that the fees awarded exceeded plaintiff's

damages.

 Having reviewed the record and considered the parties'

arguments in light of applicable law, we affirm the judgment,

substantially for the reasons expressed by Judge Moore in his

thorough and thoughtful opinions from the bench on May 19 and

June 26, 2015.

 Affirmed.

 18 A-5465-14T3