**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 21-2344
_____

In re: PAZZO PAZZO INC; and BERLEY ASSOCIATES LTD., Debtors

SPEEDWELL VENTURES LLC;

v.

BERLEY ASSOCIATES LTD, and  PAZZO PAZZO INC;,
                                                              Appellants
v.

62-74 SPEEDWELL AVE. LLC

v.

STEWART TITLE GUARANTY CO.
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 2:18-cv-15361)
District Judge: Honorable Esther Salas
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
September 22, 2022
_____

Before: AMBRO, RESTREPO and FUENTES, *Circuit Judges*

(Filed: December 15, 2022)
_____

_____

RESTREPO, *Circuit Judge*

Appellants Pazzo Pazzo, Inc. ("Pazzo") and Berley Associates, Ltd. ("Berley") (collectively "Debtors") appeal the District Court's order affirming the Bankruptcy Court's judgment for Appellees Speedwell Ventures, L.L.C. ("Speedwell") and 62-74 Speedwell Ave. LLC ("62-74 Speedwell"). The Bankruptcy Court ruled Pazzo's lease and Berley's option to repurchase the Property were validly terminated, and the termination of the option was not a "transfer" under the Bankruptcy Code. Because we agree with these rulings, we will affirm the District Court.

## I.      Facts and Procedural History

Berley owned a parcel of land and building in New Jersey known as 62-74 Speedwell Avenue (the "Property"). Berley leased the Property to Pazzo, who operated a restaurant on the Property for over twenty years. Following financial difficulties, Berley filed for Chapter 11 bankruptcy in 2012, resulting in a confirmed plan reorganization.

Berley's reorganization plan called for a sale of the Property to a secured creditor, who ultimately assigned its rights to Speedwell. The plan provided that Pazzo sign a new ten-year lease, which granted Berley the option to repurchase the Property. The option rights had to be exercised before the end of the ten-year lease or thirty days after termination of the lease and Pazzo's tenancy, whichever occurred first. The lease stipulated

---

This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

that Speedwell could terminate the lease "not less than ten (10) days" after it gave Debtors a termination notice. After the ten days had passed, Speedwell could serve Debtors an option notice, demanding that Debtors exercise their option rights within the next thirty days.

From April 2017 to August 2017, Speedwell issued four notices to Debtors: the April notice warning of the possible termination of the lease and service of the option notice; the June 9 notice serving as both the termination notice for "abandonment, vacation, or desertion," and the option notice demanding Debtors exercise their right to repurchase within thirty days; and the August 1 and 16, 2017 notices informing Debtors their option rights had lapsed and that Speedwell was filing to discharge the option in the County Clerk's office. Debtors met each of these notices with "radio silence."[1] On August 18, 2017, Speedwell filed the discharge, and sold the Property to 62-74 Speedwell on February 16, 2018.

On February 23 and 28, 2018, Debtors filed Chapter 11 petitions and listed both the lease and option to repurchase the Property in their asset schedules. Following a bench trial, the Bankruptcy Court ruled the lease had been terminated for abandonment and vacation on or before June 9, 2017, and the option to repurchase was terminated as of August 1, 2017. The Court also found the termination of the lease and option were not "transfers" under § 548(a)(1)(B) of the Bankruptcy Code and therefore could not be

---

[1] The "one exception" to this "radio silence" was a June 2017 meeting between Mr. Lawrence Berger, counsel for Debtors, and Mr. Jack Zakim, an escrow agent for Speedwell. Despite Mr. Berger stating he "would fight" for the Property, no promises were made that Debtors would satisfy their unpaid bills on the Property.

recoverable as fraudulent conveyances. Debtors appealed this decision to the District Court, which affirmed.

In their reply brief to the District Court, Debtors argued for the first time that Speedwell's June 9 option notice was invalid because the same document also served as the notice of lease termination. Under the terms of the lease, Speedwell could serve the option notice only after the lease had been terminated, which could occur - at the earliest - ten days after the notice of lease termination was issued. Debtors claimed the option notice was premature and therefore invalid under the terms of the lease. The District Court deemed this argument waived and did not address the merits. Debtors timely appealed to this Court.

## II.     Jurisdiction and Standard of Review

The Bankruptcy Court had original jurisdiction under 28 U.S.C. §§ 157(b) and 1334(b), and the District Court exercised appellate jurisdiction under 28 U.S.C. § 158(a). We have jurisdiction under 28 U.S.C. §§ 158(d) and 1291.

"Because the district court sat as an appellate court reviewing an order of the bankruptcy court, our review of its determinations is plenary." *In re Trans World Airlines, Inc.*, 145 F.3d 124, 130 (3d Cir. 1998) (internal quotation marks omitted). "In reviewing the bankruptcy court's determinations, we exercise the same standard of review as the district court." *Id.* Thus, "we review the bankruptcy court's legal determinations *de novo*, its factual findings for clear error and its exercise of discretion for abuse thereof." *Id.* at 131.

## III.  Discussion

We will affirm the Bankruptcy Court's ruling that the lease and option to repurchase were validly terminated.  The District Court acted within its discretion in deeming the challenge to the validity of the option notice waived, but we conclude that, even if addressed on its merits, the argument does not warrant relief.  Lastly, we agree with the Bankruptcy Court that the termination of the repurchase option did not constitute a "transfer" under the Bankruptcy Code.

### a.  Termination of the lease and repurchase option.

The Bankruptcy Court ruled the lease was terminated for abandonment and vacation no later than June 9, 2017, and the repurchase option was terminated as of August 1, 2017; the District Court affirmed these findings.  Debtors claim this decision is unsupported by fact and law.  We disagree.

Under the terms of the lease, Speedwell could terminate for "abandonment, vacation or desertion" of the Property.  The Bankruptcy Court properly defined abandonment as an "act accompanied by an intent to abandon," and vacation as "depriv[ing the premises] of contents of 'substantial' value."  *Liqui-Box Corp. v. Estate of Elkman*, 570 A.2d 472, 476–77 (N.J. Super. App. Div. 1990). [2]

The Bankruptcy Court did not err in finding the totality of the circumstances established Debtors' intention to abandon the Property.  *United States v. Green*, 201 F.3d

---

[2] Because there is no dispute that New Jersey law governs in this case, we do not question its application.  *Transportes Ferreos de Venezuela II CA v. NKK Corp.*, 239 F.3d 555, 560 (3d Cir. 2001).

5

251, 256 (3d Cir. 2000) (endorsing totality of the circumstances approach to discern intent because "it must be inferred from all facts and circumstances[,]…including subsequent conduct"). Debtors' "radio silence" following all four of Speedwell's notices warning of the lease and repurchase option's termination indicated their intent to abandon the Property. This silence in conjunction with the pre-June 2017 conditions of the Property—unpaid taxes and utility bills, lapsed liquor and food licenses, nonexistent employment force, multiple maintenance issues, suspended website, and no security system—provided ample grounds for the finding that Debtors intended to vacate the premises. The removal of all inventory and liquor, resulting in a "cessation of business" with "no employees or customers," effectively "deprived [the Property] of contents of 'substantial' value." *Liqui-Box Corp.*, 570 A.2d at 477. Given these circumstances, the ruling that the lease was terminated for abandonment and vacation is proper.[3]

The Bankruptcy Court relied on this evidence to find the June 9 notice served as a valid notice of the repurchase option, which enabled its finding that the option was terminated as of August 1, 2017. The Court found it relevant, and we agree, that Debtors "knew Speedwell considered the lease and the option to be terminated" but yet "said nothing." The absence of response or action by Debtors for months, making no claim of any right to the Property until filing their bankruptcy petitions in February 2018 supports the Court's finding that the repurchase option was validly terminated.

---

[3] As for termination of Pazzo's tenancy, the Court found that "once the lease was terminated so was the tenancy" because New Jersey law does not require a judgment of possession to terminate a tenancy for abandonment. *See* N.J.S.A. § 2A:18-55.

**b. Validity of option notice.**

Debtors challenged this finding for the first time in their reply brief to the District Court, arguing that deeming the option validly terminated is inconsistent with the lease's requirement that Speedwell wait at least ten days from the lease's termination before serving the option notice. Debtors raise this argument again on appeal to this Court. They claim that, if the lease was terminated on or before June 9, 2017, the earliest Speedwell could have issued the option notice was June 19, 2017. Debtors claim the allegedly premature option notice of June 9, 2017 rendered the termination of the repurchase option invalid.

Initially, the District Court did not abuse its discretion in finding this meritless argument waived. *In re Trans World Airlines*, 145 F.3d at 132–33 (reviewing for abuse of discretion district court holding that argument was waived on appeal). Ruling that Debtors waived the argument by raising it for the first time in their reply brief was consistent with governing law. *See Issa v. Sch. Dist. of Lancaster*, 847 F.3d 121, 139 n.8 (3d Cir. 2017) (noting argument could be considered waived for being raised in reply brief).

Regardless, this argument does not merit relief. Under New Jersey's "adaptabl[e]" equity principles, Debtors' failure to prove that Speedwell's "slight[ly]" premature option notice caused them prejudice is fatal to their claim. *Sosanie v. Pernetti Holding Corp.*, 279 A.2d 904, 907–08 (N.J. Ch. Div. 1971). Fairness dictates that the absence of allegations of hardship or prejudice by Debtors renders the termination of the repurchase option valid. *See Brick Plaza, Inc. v. Humble Oil & Ref. Co.*, 526 A.2d 1139, 1140 (N.J. App. Div. 1987) ("equity…intervened to mitigate" against strict adherence to contractual language when

7

tenant's slight delay in giving notice caused landlord no prejudice). Debtors maintained "radio silence" after receiving Speedwell's June 9 notice and made no attempt to exercise their option rights or lay claim to the Property prior to filing their bankruptcy petitions in February 2018. Because Debtors were not "disadvantaged" by Speedwell's failure to strictly adhere to the lease's contractual language, "no discernable purpose" is served by invalidating the option's termination. *Goodyear Tire & Rubber Co. v. Kin Properties, Inc.*, 647 A.2d 478, 481, 484 (N.J. App. Div. 1994). We affirm the finding that the option was terminated as a result of the June 9 notice.[4]

### c. Termination of option is not a "transfer" under bankruptcy code.

Lastly, Debtors claim the District Court erred in finding the termination of the option was not a "transfer" under § 548(a)(1)(B) of the Bankruptcy Code. This finding precluded Debtors from seeking recovery of the repurchase option as a fraudulent conveyance. No error occurred.

We review *de novo* the question of whether the termination of the option constitutes a "transfer" under the Code. Section 548 allows a debtor to avoid a transfer of a property interest occurring within two years before the filing of a bankruptcy petition in the event of actual or constructive fraud, but the provision "aims to make available to creditors" these interests. *In re Fruehauf Trailer Corp.*, 444 F.3d 203, 210 (3d Cir. 2006).

---

[4] New Jersey's "common sense" doctrine of *de minimis non curat lex,* or it is too small a thing to take notice of, likewise supports our finding. *Schlichtman v. New Jersey Highway Auth.*, 579 A.2d 1275, 1279 (N.J. Super. Ct. Law. Div. 1990) (citing *Moffet v. Ayres*, 3 N.J.L. 655 (N.J. 1810). No "injustice has been done" to Debtors as a result of Speedwell's noncompliance, let alone "trifling or immaterial damage[.]" *Id.* at 1280.

Leaving aside the issue of fraud, the District Court correctly found the option to repurchase the Property to be a future contingent interest protected under the Bankruptcy Code.[5] In so doing, the Court concluded that Debtors' failure to convert this contingent interest into actual ownership did not amount to "dispos[ing] of or part[ing] with" their protected interest in the Property. *See* § 548(a)(1)(B). Simply put, Debtors did not transfer their option rights to Speedwell but rather "failed to pursue a business opportunity" by allowing their interest in potential ownership to lapse. Debtors made no prepetition attempts to exercise their option rights, which meant any interest in the Property no longer existed when they filed for bankruptcy. We do not endeavor to "threaten the rule that the [debtor's] estate can take only what the debtor possessed before filing." *Mission Prod. Holdings, Inc. v. Tempnology, LLC*, 139 S. Ct. 1652, 1663 (2019). Here, Debtors did not possess the option they failed to pursue, and the termination of the option did not constitute a "transfer" under the Bankruptcy Code's § 548(a)(1)(B).[6]

## IV. Conclusion

For the reasons outlined above, we will affirm the order of the District Court.

---

[5] *See Bright v. Forest Hill Park Dev. Co.*, 31 A.2d 190, 198 (N.J. Ch. 1943) (holding option to purchase as future interest, not present ownership); *In re Majestic Star Casino, LLC*, 716 F.3d 736, 750 (3d Cir. 2013) ("Congress has generally left the determination of property rights in the assets of a bankrupt's estate to state law.") (finding future interests protected under Bankruptcy Code).

[6] This conclusion also supports the Code's "stringent" limit on allowing debtors to use § 548(a) "to unwind pre-bankruptcy transfers." *Mission Prod. Holdings*, 139 S. Ct. at 1663.