H. HOROWITZ, INCORPORATED, A NEW JERSEY COR-PORATION, PLAINTIFF, v. WEEHAWKEN TRUST AND TITLE COMPANY, A NEW JERSEY CORPORATION, DE-FENDANT.

Decided March 15, 1932.

For the plaintiff, *George Rothstein.*

For the defendant, *Dippel, Davis & Stewart.*

ACKERSON, S. C. C. The complaint seeks to recover from the defendant bank the balance of a deposit made with it by Harry Horowitz in the name of the plaintiff before its incorporation, which balance, the plaintiff claims, is $1,858. Defendant's answer admits the deposit but denies the amount

of the balance insisting that it is only $208, which amount the defendant is willing to pay to the plaintiff.

Plaintiff now moves to strike out as sham that part of the answer which alleges that there is only a balance of $208 standing to the credit of the plaintiff, and to strike out as frivolous that part of the answer which alleges a willingness to pay over the alleged balance of $208.

Taking up the last criticism first, we must remember that the complaint charges that defendant refuses to pay plaintiff the amount of $1,858. In admitting this the defendant is certainly justified in pleading what it claims to be the true balance, and its willingness to pay it, without having such pleading censured as frivolous.

The real question raised by this motion is whether the defendant's claim that the real balance is only $208, is sham, and this turns upon whether two checks aggregating $1,650 are properly charged against the account in question.

From the affidavits submitted with this motion the following facts should be noted in their chronological order: On November 19th, 1931, Harry Horowitz went to the defendant's place of business with Anna Sobel, a promoter of and now the president and treasurer and principal stockholder of the plaintiff corporation, and opened a checking account in the name of "H. Horowitz, Incorporated," with the deposit of a certified check drawn by Anna Sobel on another bank. Harry Horowitz stated to the defendant's treasurer, in the presence of Miss Sobel, that he was the secretary of "H. Horowitz, Incorporated," a corporation, and that he was the only one authorized to sign checks drawn on the account. The certificate of incorporation of "H. Horowitz, Incorporated," was not signed and executed until two days later on November 21st, 1931, and filed in the office of the secretary of state on November 24th, 1931. On November 24th, 1931, three checks were presented to the defendant by other banks where they had been deposited by the payees thereof. One was for $50, dated November 24th, 1931, payable to Joseph A. Harned and signed "H. Horowitz;" one for $50, dated November 24th, 1931, payable to George Rothstein and

signed "H. Horowitz," and one for $42, dated November 23d, 1931, payable to James Orlando and signed "H. Horowitz." As the three checks bore the individual signature of H. Horowitz and he had no personal account with the defendant, its treasurer directed the bookkeeper to write the words "H. Horowitz, Incorporated," above the signature and the word "secretary" below, on each check and they were charged to the account which had been opened as aforesaid.

On November 25th, 1931, Mr. H. Horowitz personally presented to the defendant a check for $150, payable to "cash" and signed "H. Horowitz." Defendant's bookkeeper, in the presence of Mr. Horowitz, informed the defendant's teller that there was no individual account and wrote "H. Horowitz, Incorporated," above the signature and Mr. Horowitz then individually endorsed the check and was paid the $150 in cash. On November 30th, 1931, at about twelve o'clock noon, Mr. Horowitz personally presented another check for $1,500, payable to "cash" and signed "H. Horowitz." At the direction of defendant's teller, Mr. Horowitz added "Incorporated," after the signature and again wrote his name "H. Horowitz" underneath, endorsed his name on the back and was paid the $1,500 in cash.

Afterwards on November 30th, 1931, at six-fifteen P. M., the defendant was served with a notice signed "H. Horowitz, Incorporated, by Anna Sobel, incorporator," which informed defendant that the plaintiff was incorporated November 23d, 1931; that no organization meeting had been held as yet, and that defendant was not to honor any checks against the account which had been opened in the name of "H. Horowitz, Incorporated," until further instructed by resolution of the company, and that the defendant would be held strictly accountable for any moneys on deposit in the name of "H. Horowitz, Incorporated." Defendant's affidavits allege that this was the first notice it had received that "H. Horowitz, Incorporated," had not as yet been fully organized and that Harry Horowitz was not its secretary and not authorized to sign checks against the aforesaid account. All of the above mentioned checks had already been charged against said account.

On December 1st, 1931, the organization meeting of the plaintiff corporation was held and its officers elected, and at this meeting a resolution was adopted ratifying and confirming the deposit previously made by Harry Horowitz with the defendant, in opening an account in the name of "H. Horowitz, Incorporated," and the issuance and payment of the first three checks hereinbefore mentioned in the following language:

"Whereas, one Harry Horowitz has received the sum of $2,000 for stock subscribed in this company, and has deposited said sum of money with the Weehawken Trust and Title Company of Union City, in the name and to the credit of this company,

"Be it therefore resolved, that such deposit with the aforesaid bank to the credit of this company be and the same is hereby confirmed and ratified.

" 'Whereas it has been brought to the knowledge of this company that the said Harry Horowitz has, without the authorization or consent of this company, issued checks upon the moneys on deposit to the credit of this company in the Weehawken Trust and Title Company, amount which checks are:

" 'One to the order of George Rothstein in the sum of $50.

" 'One to the order of Joseph A. Harned in the sum of $50.

" 'One to the order of James Orlando in the sum of $42.

" 'Be it further resolved, that the issuance of the aforementioned checks only, be and they are hereby ratified and confirmed and acquiesced in, but this ratification and the confirmation shall not be construed or interpreted to be any ratification or confirmation of any authority or right on the part of said Harry Horowitz to draw upon the funds of this corporation.' "

It is to be noted from what has already been said that at the time the deposit contract was made on November 19th, 1931, the plaintiff corporation was not in existence. By the great weight of authority, however, a contract made by the promoters of a corporation before it was formed becomes the contract of the corporation, so that it is both entitled to the

benefit thereof and liable thereon, if it expressly or impliedly
ratifies and adopts the same after it comes into existence,
provided it is a contract which the corporation has the power
under its charter to make. 14 *C. J.* 257. Whether we
call the act by which the corporation becomes bound upon
such contracts, a ratification or an adoption thereof, it is
well settled that by voluntarily accepting the benefits accru-
ing thereunder, after full knowledge, and having full liberty
to decline the same, the corporation is regarded as adopting
the contract *cum onere,* taking the burdens thereof with the
benefits. *Seacoast Railroad Co.* v. *Wood,* 65 *N. J. Eq.* 530;
14 *C. J.* 259, 260; 17 *A. L. R.* (*Anno.*) 477. This principle
is but the adaptation of the well recognized rule of the law
of agency to the law of corporations that where a principal
has an election either to repudiate or to ratify an unauthorized
act of an agent on his behalf, he cannot, without the consent
of the other party to the transaction, ratify in part or repu-
diate in part, but must either repudiate or ratify the whole
transaction. He cannot ratify that part which is beneficial
to himself and reject the remainder, but with the benefits
he must take the burden. Thus a principal cannot ratify a
contract made for him by an agent without also ratifying and
becoming bound by the terms and conditions, although un-
authorized, upon which it was made, or without ratifying
the representations and warranties, and all other instrumen-
talities employed by the agent as an inducement to bring
about the contract. 2 *C. J.* 481, 482; *Bodine* v. *Berg,* 82
*N. J. L.* 662 (at *p.* 669).

So it must naturally follow, that while a corporation may
adopt a contract made by another in its name before its in-
corporation, nevertheless in so doing it cannot adopt a part
thereof which may be beneficial or desirable and discard that
which is not, without the consent of the other party to the
contract. Even in those jurisdictions which look upon the
act of the corporation in accepting such a contract, not as a
ratification thereof, because of the absence of agency, but
rather as an adoption in the nature of a novation, or the
making of a new contract by the corporation as of the date of

the adoption, the ordinary rules of contract law must apply. 14 *C. J.* 262, 263, §§ 294, 296. Hence, if the acts of the promoters of a corporation in making a contract for it before its organization are to be considered in the nature of a proposal to the future corporation for a contract, so that a binding engagement with the corporation will arise when it· accepts the same after it has been fully organized such acceptance must naturally be of the whole contract, as otherwise there would be no meeting of the minds essential to a binding legal engagement. 14 *Id.* 263, § 296.

In the instant case it appears that the deposit in question was made and the account opened in the name of "H. Horowitz, Incorporated," upon the understanding that Harry Horowitz, who actually made the deposit was secretary of "H. Horowitz, Incorporated," and that he alone was authorized to sign checks drawn on the account. These were the terms of the deposit contract. The money did not then belong to the present plaintiff, because it was not then in existence, and the deposit could not become the property of the plaintiff until accepted by ratification or adoption of the deposit contract. Hence when the plaintiff, after its organization, by the above quoted resolution provided "that such deposit with the aforesaid bank to the credit of this company be and the same is hereby confirmed and ratified," it necessarily had to adopt all of the terms, conditions and provisions of the deposit contract, as they existed up until that time. One of the terms was that Harry Horowitz alone had authority to sign checks drawn on the account and that is the way the matter stood at the time the plaintiff attempted to take the benefits of such contract while disregarding its burdens. Clearly the plaintiff could not, as it attempted to do by the aforesaid resolution, adopt, ratify or confirm the authority of Harry Horowitz to issue the first three checks drawn against the account, thereby taking the benefits of the deposit contract, and at the same time repudiate his authority to issue the last two checks which were presented for payment in accordance with the terms of the deposit contract as made by said Horowitz.

It may be urged that each of the five checks drawn against this account constituted a different, separate and distinct transaction, and that, therefore, the ratification, confirmation or adoption of Horowitz's act in drawing one or more of them would not necessarily amount to a ratification or adoption of his acts with respect to the others. The difficulty with this suggestion is that it overlooks the fact that in order to accept the benefits of any of these checks, the plaintiff must not only ratify or confirm the particular check, but also the deposit contract against which it was drawn, which contract was a single transaction, and its ratification or adoption carried with it all of the terms and conditions imposed when the account was opened, including the right of said Horowitz to sign checks drawn against the account. Naturally under the foregoing rule, the plaintiff could not adopt the deposit contract where it might be beneficial so to do, and repudiate it where it would not, without the consent of the defendant bank.

The plaintiff, however, seeks to extricate itself from the effect of the foregoing rule, by insisting that even if Horowitz had authority to sign all of these checks, nevertheless, he had no right to appropriate any part of the account to his own use. That, therefore, when he drew the last two checks aggregating $1,650 to the order of "cash," endorsed them personally and cashed them with the defendant, the latter was put on inquiry to determine whether or not Horowitz was drawing these funds for his own use and not for corporate business; and failing to make such inquiry the defendant cannot legally charge these checks against the account. In support of this position the plaintiff relies upon *Havana C. R. Co.* v. *Central Trust Co.,* 123 *C. C. A.* 72; 204 *Fed. Rep.* 546; *L. R. A.* 1915 B 715, and *Dennis Metal Manufacturing Co.* v. *Fidelity Union Trust Co.,* 99 *N. J. L.* 365. These cases, however, are more helpful to the defendant than to the plaintiff. In the first a corporate officer having authority to draw checks on the corporation's account at a bank, drew one to his own order which he endorsed personally and deposited to the credit of his account in another bank,

which last mentioned bank sent it on to the drawee bank which charged the check to the corporation's account. The court held that "in case of a corporate check signed by an officer with express or implied authority, the mere fact that it is drawn to his order and therefore may be improperly used will not require the bank to question it. But if the bank have knowledge that the officer is using the check for his personal benefit, *e. g.,* to pay his debt to the bank or to deposit it to his personal credit, then the bank is put upon inquiry, and if it fail to make it, pays at its peril." The court, therefore, held that the check in question was properly chargeable to the corporation's account.

In the second case above cited it was held that "where a bank received a check payable to a corporation and endorsed by the president of the corporation so as to make it payable to himself, which is deposited in the personal account of the president with the bank, the bank is chargeable with notice, so as to put it upon inquiry, to determine whether the president of the corporation was authorized so to use its funds as against the corporation." It is to be noticed that this case supplied one of the examples mentioned in *Havana C. R. Co.* v. *Central Trust Co., supra,* as sufficient to put the bank on notice, *i. e.,* that the check was deposited in the personal account of the drawing officer. Furthermore, the president of the corporation in that instance had no authority to endorse checks for any purpose. In the case *sub judice,* however, the checks were not deposited to the credit of Harry Horowitz, in the defendant bank. If his authority to draw these checks upon the account in question as the alleged secretary of the plaintiff corporation cannot now be questioned, then it would make no difference whether the checks were drawn to his own order or to cash, so long as the bank had no knowledge or notice that the proceeds were not being used for corporate purposes. Corporations often have occasion to pay corporate officers by check, or to draw cash from their bank of deposit for corporate needs, and it would be an intolerable burden on banks to hold that they are put upon inquiry to ascertain the purpose for which such checks are being used before charging them to the corporation's account.

As was said in the course of the opinion in *Havana C. R. Co.* v. *Central Trust Co., supra:*

"It must also be observed, from another point of view, that to relieve a bank from questioning the validity of checks in the form under consideration works no real injustice to corporation depositors. Corporations may protect themselves by requiring counter-signatures, provided they notify the bank of the requirement. If they do not choose to do so, it may fairly be presumed that they prefer the risk to the inconvenience. In such circumstances, it is not unfair to the depositor to say that if the bank have notice or knowledge of wrong-doing, it must make inquiry, but that if nothing wrong in the history of a check is brought to its attention, it is not called upon to inquire about it; that a bank is not bound to question every corporate check regardless of amount —and manifestly no line can be drawn—merely because it is drawn by a corporate officer to his own order."

See, also, footnotes to *Allen* v. *Puritan Trust Co., L. R. A.* 1915 C 518.

It follows from what has already been said that the defendant's answer cannot be stricken out as sham, and the plaintiff's motion is, therefore, denied, and an order may be presented in accordance with the conclusion thus reached.