**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1466-22

JOSEPH LASRY and
YONNIT LASRY,

     Plaintiffs-Appellants,

v.

SHLOMO COHEN, MIRIAM
COHEN, and ELIYAHU COHEN,

     Defendants-Respondents.

_____

Submitted September 11, 2024 – Decided October 7, 2024

Before Judges Currier and Marczyk.

On appeal from the Superior Court of New Jersey, Chancery Division, Ocean County, Docket No. C-000118-22.

Huizenga Law Offices, attorneys for appellants (Richard G. Huizenga and William J. Popovich, Jr., on the briefs).

Lori C. Greenberg & Associates, attorneys for respondents (Lori C. Greenberg and Thomas M. Pohle, on the brief).

PER CURIAM

Plaintiffs Joseph and Yonnit Lasry appeal from the Chancery Division's November 4, 2022 order granting summary judgment in favor of defendants Shlomo and Miriam Cohen.[1]  Plaintiffs also appeal from the court's December 20, 2022 order denying their motion for reconsideration.  Following our review of the record and applicable legal principles, we affirm.

I.

This matter involves a dispute regarding an alleged breach of a sales agreement.  The subject property is a single-family home located in Toms River. In July 2019, defendants purchased the subject property for $695,000.  In September 2019, plaintiffs orally agreed to lease the property, whereby they would rent the subject property for $3,500 per month for a term that ended on June 1, 2020.  The written lease agreement was never signed.

On June 1, 2020, Shlomo and Joseph signed a handwritten sales agreement in which defendants agreed to sell the property to plaintiffs for $785,000.  The agreement was not signed by Miriam, who also owned the property.  The terms of the agreement required plaintiffs to pay $20,000 to defendants during the first

_____

[1]  Because the parties share last names, we refer to them at times by their first names. We intend no disrespect.

week of June and that if closing takes place before April 1, 2021, $20,000 will be "applied to [the] purchase price, otherwise it's the summer rental." The agreement also made clear that plaintiffs would still be responsible for the monthly rent up until closing.

Joseph paid $20,000 to Shlomo in June 2020. However, in March 2021, Joseph told Shlomo that they would not be closing on April 1. On April 26, 2021, Joseph texted Shlomo that they would "mak[e] every effort" to vacate the property by June 1. Plaintiffs failed to pay their April 2021 rent, remained in the property, and made no further rental payments.[2]

On April 29, 2021, defendants' lawyer sent plaintiffs a letter informing them that they had three days' notice to leave the property based on the damage plaintiffs allegedly caused to several areas of the home and threats to destroy the house. On May 7, 2021, defendants filed an eviction complaint based on

---

[2] In early 2021, plaintiffs' real estate attorney proposed a more detailed sales contract with a proposed closing date of May 1, 2021, but the contract was never executed by the parties. Plaintiffs claim defendants' prior attorney "openly acknowledged" that April 1, 2020 was not a closing date or a time of the essence closing date without citation to the record. Plaintiffs' fact section of the brief makes various other representations without citation to the record.

A-1466-22

plaintiffs' nonpayment of rent and destruction of property.[3] The letter indicated that remaining in possession of the property after the date of termination would constitute acceptance of the rent increase and rule changes.

In June 2021, plaintiffs filed an action for breach of contract and for specific performance pursuant to the option sales agreement. Defendants attempted to proceed in landlord-tenant court with the previously initiated litigation to evict plaintiffs. In July 2021, the court denied the application for judgment of possession and directed the parties to "proceed in the Law Division on [plaintiffs'] specific performance case."

Defendants filed a second eviction complaint against plaintiffs in February 2022, based on nonpayment of rent. The landlord-tenant actions were subsequently consolidated with plaintiffs' complaint and transferred to the Law Division. The case was subsequently transferred to the Chancery Division.

Thereafter, defendants moved for summary judgment, seeking to dismiss plaintiffs' complaint. Plaintiffs cross-moved for summary judgment, seeking to compel specific performance. On November 4, 2022, the Chancery Division, as

---

[3] Defendants' lawyer sent plaintiffs another letter on May 13, 2021, informing them that the current lease would be terminated on June 1, 2021, and that if they wanted to continue renting the property, the rent would increase to $8,500 per month and $25,000 during the months of July and August.

discussed more fully below, granted defendants' motion for summary judgment and dismissed plaintiffs' complaint with prejudice. The court also denied plaintiffs' motion for summary judgment. Thereafter, plaintiffs moved for reconsideration, which was denied on December 20, 2022.

This appeal followed.[4]

## II.

Plaintiffs argue the court erred in denying their motion for summary judgment because defendants materially breached the sales agreement, and therefore, plaintiffs are entitled to specific performance. They contend Shlomo was authorized to act on behalf of his wife, Miriam, in signing the contract. Plaintiffs further assert that because there was no time of the essence clause in the contract, there was no basis for defendants to unilaterally terminate the sales contract.

We review the trial court's grant or denial of a motion for summary judgment de novo, applying the same standard used by the trial court. Samolyk v. Berthe, 251 N.J. 73, 78 (2022). We consider "whether the competent evidential materials presented, when viewed in the light most favorable to the

---

[4] The court subsequently filed an amplification of its summary judgment decision pursuant to Rule 2:5-1(b).

non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995).

We review a trial judge's decision on whether to grant or deny a motion for rehearing or reconsideration under Rule 4:49-2 for an abuse of discretion. Branch v. Cream-O-Land Dairy, 244 N.J. 567, 582 (2021); Kornbleuth v. Westover, 241 N.J. 289, 301 (2020). "The rule applies when the court's decision represents a clear abuse of discretion based on plainly incorrect reasoning or failure to consider evidence or a good reason for the court to reconsider new information." Pressler & Verniero, Current N.J. Court Rules, cmt. 2 on R. 4:49-2 (2022).

A.

Plaintiffs contend Shlomo clearly satisfied the requisites of being an authorized agent on behalf of his wife.[5] Plaintiffs argue that under the statute

---

[5] Plaintiffs contend this issue was not raised by defendants and was only addressed by the court when ruling on the reconsideration motion. However, the transcript from the summary judgment hearing reflects this issue was in fact raised by defense counsel. Moreover, it was also raised during oral argument on the reconsideration motion by defense counsel but was not addressed by plaintiffs when given an opportunity. Counsel did not object on either occasion when the issue was raised.

of frauds and common law agency principles, Shlomo's signature legally binds Miriam to the sales agreement. Defendants counter that even if the option itself did not terminate on April 1, 2021, the sales agreement was never validly executed because Miriam, a co-owner of the property, never signed it.

The court initially addressed whether the option contract was valid, given that it was not signed by Miriam. The court noted there was no dispute the property was held in the name of both Shlomo and Miriam and that only Shlomo executed the option agreement. The court noted, "since [p]laintiff[s] ha[ve] not pointed to any evidence of an express agency relationship, it would seem that [p]laintiff[s] must prove the existence of an apparent agency relationship . . . to explain the absence of [Miriam's] sign[a]ture." The court further observed defendants had not demonstrated proof that Shlomo had the apparent authority to contract with plaintiffs. Additionally, the court noted there was no indication Miriam ratified the contract after its execution. Accordingly, it concluded the option agreement cannot bind defendants.

Under agency law, a third party is justified in presuming that an agent has authority to perform a particular act on behalf of the principal when the agent has apparent authority. C.B. Snyder Realty Co. v. Nat'l Newark & Essex Banking Co. of Newark, 14 N.J. 146, 154 (1953). An agent has apparent

authority "when a principal 'acts in such a manner as to convey the impression to a third party that the agent has certain power which he may or not possess.'" Rodriguez v. Hudson Cnty. Collision Co., 296 N.J. Super. 213, 220 (App. Div. 1997) (quoting Lampley v. Davis Mach. Corp., 219 N.J. Super. 540, 548 (App. Div. 1987)).  The party attempting to prove apparent authority bears the burden to show that the principal vested the agent with apparent authority by clear and convincing evidence, even when the alleged principal and agent are a married couple.  Lobiondo v. O'Callaghan, 357 N.J. Super. 488, 496-97 (App. Div. 2003).  "Thus, a conclusion that a party has acted with apparent authority must rest upon the actions of the principal, not the alleged agent."  Id. at 497 (emphasis added) (citing Wilzig v. Sisselman, 209 N.J. Super. 25, 35 (App. Div. 1986)).

Plaintiffs provide no evidence to support their contention that Shlomo had authority to sign the option contract for both himself and Miriam.  They simply argue that "Shlomo Cohen's [s]ignature and [a]ctions [s]atisfy [b]oth N.J.S.A. 25:l-l3(a) and [c]ommon [l]aw [a]gency [p]rinciples so as to [l]egally [b]ind his [w]ife Miriam Cohen to the [a]greement of [s]ale."  However, the law requires them to show that Miriam's actions held out Shlomo as her agent. See Lobiondo, 357 N.J. Super. at 497.  Plaintiffs have failed to provide any evidence that

8

Miriam "acted as to vest her husband with apparent authority" and thus, have not met the clear and convincing standard to which they are held. Id. at 495. Therefore, the trial court appropriately granted defendants' motion for summary judgment and denied plaintiffs' motion for reconsideration.

Nor have plaintiffs demonstrated Miriam ratified the contract. Ratification occurs where one "voluntarily accept[s] the benefits accruing" under a contract "after full knowledge, and having full liberty to decline the same." H. Horowitz, Inc. v. Weehawken Tr. & Title Co., 10 N.J. Misc. 417, 421 (Sup. Ct. 1932). Contract "[r]atification requires intent to ratify plus full knowledge of all the material facts." Thermo Contracting Corp. v. Bank of N.J., 69 N.J. 352, 360-61 (1976). The meaning of ratification of a contract is similar to the general meaning of ratification in agency law. Ibid. "Ratification may be express or implied, and intent may be inferred from the failure to repudiate an unauthorized act." Id. at 361. As the Chancery Division noted here, there is no evidence Miriam ratified the agreement. We discern no error in the court's conclusion.

### B.

Plaintiffs next argue that although April 1, 2021 was contemplated as the closing date, because there was no time of the essence clause in the contract and

defendants did not serve a notice fixing a date as time of the essence for closing, defendants were not permitted to cancel the contract when the closing did not occur before that date. Paradiso v. Mazejy, 3 N.J. 110, 114-15 (1949). Plaintiffs also assert they were ready at all times to close and did not materially breach the contract. Rather, they contend defendants breached the contract when they refused to close.

The court addressed the two written agreements (initial lease and option agreement) to determine if plaintiffs had a contractual option to purchase the subject property, and "whether the option was exercised or whether it could be exercised past April 1, 2021." The court noted both parties agreed a tenancy was created by the unsigned initial lease and that the rental term ran from September 1, 2019, through June 1, 2020, with a monthly rent of $3,500. The court stated both parties further agreed the option agreement provided plaintiffs with an option to purchase the subject property for $785,000. Defendants, however, believed the option must be exercised by April 1, 2021, whereas plaintiffs believed it could be exercised on a later date.

The court determined that despite the parties' differing interpretations of the impact of the option agreement on the terms of the lease, the "disputed interpretations are not material to the decision" because, as the court concluded,

"the [o]ption [a]greement is part and parcel of the rental agreement and to understand the parties' agreement, both writings must be read together." The court observed that plaintiffs' verified complaint acknowledged plaintiffs had not exercised their option to purchase as of the time the complaint was filed on June 18, 2021. Rather, plaintiffs maintained they were still within a reasonable period of time to exercise the option. At summary judgment, plaintiffs pointed to the fact that they had obtained a mortgage commitment in December 2021. The court noted, however, the mortgage commitment was more than eight months after the April 1, 2021 date. Moreover, the draft sales contract—unsigned by defendants—did "not demonstrate that [p]laintiff[s] took any action to exercise the option." Therefore, the court concluded "[p]laintiff[s] did not exercise [their] option prior to April 1, 2021."

The court noted the initial lease was for 9.7 months and "allowed for changes provided they were agreed [to] by the parties in writing and that any terms not specifically changed would remain as addressed in the [i]nitial [l]ease." The court observed the handwritten option agreement constituted an agreed-upon change to the initial lease and that the "[o]ption [a]greement made changes, by extending the term, providing for an option to purchase, and establishing rent for the new term." The court concluded the option agreement

11

A-1466-22

"extended the rental term to April 1, 2021, and required [p]laintiff[s] to pay $3,500 per month rent during that term." The court further determined that the expiration of the term on April 1, 2021, "without the parties having entered a new agreement, resulted in [p]laintiff[s] becoming . . . hold over tenant[s], month-to-month." Accordingly, the court found that at the end of the stated term in the lease, "here modified to April 1, 2021 by the [o]ption [a]greement, where the tenant remains in possession and continues to pay rent, he thereby becomes a hold over tenant."

The court further concluded that "[p]laintiff[s'] status as . . . hold over tenant[s] prohibits [them] from exercising the option that was part of the lease." See Andreula v. Slovak Gymnastic Union Sokol Assembly No. 223, 140 N.J. Eq. 171, 172 (E. & A. 1947). It noted the court there held that "[a]n option to purchase contained in a written lease cannot be exercised after the expiration of the lease by a tenant holding over." Ibid. Because of plaintiffs' hold over status, the court concluded they could no longer enforce the purported option provision.

The court further commented that plaintiffs were also in breach of the agreement by not paying rent. The court noted, "[the] breach and the expiration of the rental term without a further agreement providing an extension affected [p]laintiff[s'] ability to exercise the option . . . ." To buttress its decision, the

12

court pointed to a text message exchange, where Joseph indicated "he no longer had the ability to exercise the option and intended to move out."

We affirm substantially for the reasons set forth by the trial court. We briefly add the following. Because plaintiffs failed to exercise their option prior to April 1, 2021, they had no established right to invoke the option set forth in the June 2020 contract. Moreover, "[i]n a real estate transaction, an option contract is a unilateral agreement requiring a party to convey property at a specified price, provided the option holder exercises the option 'in strict accordance' with the terms and time requirements of the contract." Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Assocs., 182 N.J. 210, 223 (2005) (quoting State By and Through Adams v. N.J. Zinc Co., 40 N.J. 560, 576 (1963)). The "general rule" with option contracts is that "time is of the essence." Brick Plaza, Inc. v. Humble Oil & Refin. Co., 218 N.J. Super. 101, 104 (App. Div. 1987). Exact compliance with the terms of the option contract is required "[b]ecause the property owner cannot withdraw the offer," while the option holder is "free to accept or reject" the offer. Brunswick Hills Racquet Club, 182 N.J. at 223 (quoting Goodyear Tire & Rubber Co. v. Kin Props., Inc., 276 N.J. Super. 96, 105 (App. Div. 1994)). Since plaintiffs were not able to close by April 1, they did not comply with the terms of the option, thereby letting the

13

option expire. <u>Brunswick Hills Racquet Club</u>, 182 N.J. at 223. We conclude the court here rendered a sensible interpretation of the contracts entered into between the parties, properly analyzed the facts in reaching its conclusion, and appropriately granted summary judgment in favor of defendants and denied plaintiffs' motion for reconsideration.

To the extent we have not specifically addressed any of plaintiffs' remaining arguments, we conclude they lack sufficient merit to warrant discussion in a written opinion. <u>R.</u> 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-1466-22